FILED
CLERK, U.S. DISTRICT COURT

8/4/14

CENTRAL DISTRICT OF CALIFORNIA
BY: CS_____ DEPUTY

FILED

AUG   4 2014

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY_____ Deputy Clerk

ENTERED

AUG   4 2014

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY_____ Deputy Clerk

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

CV14-6108-FMO

In re:

GGW Brands, LLC
GGW Marketing, LLC

                                    Debtor(s).

Case No.: 2:13-bk-15130-SK

CHAPTER 11

**REPORT AND RECOMMENDATION TO DISTRICT COURT FOR WITHDRAWAL OF REFERENCE AND FOR DETERMINATION OF POSSIBLE INCARCERATION FOR CIVIL CONTEMPT**

After the Supreme Court's decision in Stern v. Marshall, 131 S. Ct. 2594 (2011), and

Executive Benefits Insurance Agency v. Arkison, 134 S. Ct. 2165 (2014), it is unclear

whether this Court has the constitutional authority to issue an arrest warrant for civil

contempt. Because the Court believes that the facts of this case justify issuing arrest

warrants as a coercive sanction for civil contempt, the Court hereby recommends that

the District Court for the Central District of California withdraw the reference, pursuant to

28 U.S.C. § 157(d), for the limited purpose of considering issuance of arrest warrants

for civil contempt against Joseph Francis and Perfect Science Labs, LLC.

Attached please find the Court's report and recommendation to the District Court for withdrawal of reference and for determination of possible incarceration for civil contempt.

Date: _August 4, 2014_

_____
United States Bankruptcy Judge

I.      Procedural History

    a. Bankruptcies

GGW Brands, LLC, GGW Direct, LLC, GGW Events, LLC, and GGW Magazine, LLC (collectively, the Original GGW Debtors) filed chapter 11 cases on 2/27/13.[1] BK Docket #1.[2]  On 3/21/13, Wynn Las Vegas, LLC d/b/a Wynn Las Vegas filed a motion to appoint a chapter 11 trustee (Trustee Motion).  BK Docket #28.  The Court granted the Trustee Motion and on 4/12/13, appointed R. Todd Neilson as the chapter 11 trustee (Trustee) in the Original GGW Debtors' cases.  BK Docket #82.

On 5/9/13, the Trustee filed a motion to: 1) revoke the cancellation of GGW Marketing, LLC; 2) file a bankruptcy petition on behalf of GGW Marketing, LLC; and 3) file an adversary proceeding to recover certain trademarks vital to the Girls Gone Wild business, which the Trustee alleged had been fraudulently transferred by GGW Marketing, LLC to various entities controlled by Joseph Francis (Francis) (Revocation Motion).  BK Docket #120.  On 5/20/13, the Court entered an order granting the Revocation Motion (Revocation Order).  BK Docket #153.[3]  On 5/22/13, GGW Marketing, LLC filed a chapter 11 petition.  In re GGW Marketing, LLC, 13-23452-SK.[4]  The Debtors' cases are being jointly administered.  BK Docket #172.

    b. Neilson v. Francis

On 4/23/13, the Trustee filed a "Complaint for Injunction and Damages" (Complaint) against Francis.  AP Docket #1.  In the Complaint, the Trustee alleged that after he was appointed as the Trustee of the Original GGW Debtors, Francis attempted to exercise control over the Original GGW Debtors' property and employees (Employees) by: 1) making violent threats to and attempting to fire the Employees; 2) being verbally abusive to the Employees; and 3) having the Employees perform personal services for him.  Complaint ¶¶ 13, 15.  In the Complaint, the Trustee sought damages for Francis's violation of the automatic

---

[1]  The Original GGW Debtors filed separate bankruptcy petitions: 1) In re GGW Brands, LLC, 13-15130-SK; 2) In re GGW Direct, LLC, 13-15132-SK; 3) In re GGW Events, LLC, 13-15134-SK; and 4) In re GGW Magazine, LLC, 13-15137-SK.

[2]  All references to "BK Docket" are to the docket in In re GGW Brands, LLC, 13-15130-SK and all references to "AP Docket" are to the docket in Neilson v. Francis, 13-01468-SK.

[3]  Francis opposed the Revocation Motion and appealed the Revocation Order to the District Court for the Central District of California (District Court) (Revocation Appeal).  Francis v. Neilson (In re GGW Brands, LLC), 13-04162-FMO, Docket #1.  The Revocation Appeal was dismissed on 8/7/13 for failure to prosecute.  Francis v. Neilson (In re GGW Brands, LLC), 13-04162-FMO, Docket #7.

[4]  The Original GGW Debtors and GGW Marketing, LLC are referred to collectively as "the Debtors".

stay and an injunction against Francis's interference with the Original GGW Debtors' operations.  Id. ¶¶ 17-29.

> i.  TRO

Also on 4/23/13, the Trustee filed an "Emergency Motion for . . . Temporary Restraining Order . . . Against Joseph R. Francis" (TRO Motion).  AP Docket #3. In the TRO Motion, the Trustee sought to enjoin Francis from doing the following: 1) "communicating with the [Original GGW] Debtors' [E]mployees . . . or attempting to exercise influence or control over any [E]mployees rendering services to the [Original GGW] Debtors;" 2) "coming within 100 feet of the [Original GGW] Debtors' offices or its [E]mployees;" and 3) "interfering with the Trustee's control of the [Original GGW] Debtors' assets."  Id. ¶ 1.  The next day, the Court held a hearing and granted the TRO Motion.  On 4/25/13, the Court issued a "Temporary Restraining Order and Order to Show Cause Why a Preliminary Injunction Should not Issue Against Joseph R.  Francis" (TRO).  AP Docket #16.  The TRO prohibited Francis and his agents, servants, employees, attorneys, and those persons in concert or participation with him from:

- Communicating with [the Original GGW Debtors'] [E]mployees (including those employees of [Perfect Science Labs, LLC (PSL)] who are leased by [the Original GGW Debtors]) [including] calling, e-mailing, texting, faxing, or otherwise contacting, engaging with, or attempting to exercise influence or control over any [E]mployees rendering services to [the Original GGW Debtors].

- Coming within 100 feet of [the Original GGW Debtors'] offices (located at 10940 Wilshire Boulevard, Los Angeles, California 90024) or its [E]mployees (including those employees of [PSL] who are leased by [the Original GGW Debtors]).

- Interfering with the Trustee's control of [the Original GGW Debtors'] assets (including any servers or computers that have [the Original GGW Debtors'] electronically stored information).

- Threatening or harassing [E]mployees of [the Original GGW Debtors] or Argyle Online, LLC (including those employees of [PSL] who are leased by [the Original GGW Debtors] or by Argyle Online, LLC).

Id. at 4.[5]

---

[5]  For ease of reference, the Court cites the page numbers on the electronically filed documents' headers.

The TRO ordered Francis to show cause why a preliminary injunction should not issue (First OSC), and set a hearing on 5/8/13 (First OSC Hearing). Id. at 4-5.[6]

    ii. Stipulation and Consent Order

On 4/30/13, the Trustee filed an "Emergency *Ex Parte* Application to Enforce and, to the Extent Necessary, Clarify and Expand Temporary Restraining Order by Specifically Naming Additional Parties" (Ex Parte). AP Docket #25. In the Ex Parte, the Trustee argued that Francis both personally, and through others, violated the TRO. Id. at 3. Specifically, the Trustee alleged that Francis's driver, acting at Francis's request, had picked up a Cadillac Escalade belonging to GGW Events, LLC from a repair shop, signed a release, and drove it to Francis's residence. Id. When Francis's driver was instructed to return the car to the Debtors, he refused and threatened the Trustee's counsel. Id.

The Trustee stated that Abbey Wilson (Wilson), Francis's girlfriend, would be installed as the new manager of PSL. Id. According to the Trustee, Wilson directed Equity Office Properties (EOP), the "lessor of office space to [PSL],"[7] located at 10940 Wilshire Boulevard, Los Angeles, California 90024 (Premises), to change access cards for the door to the suite occupied by the Trustee and the Original GGW Debtors and to terminate parking for the Trustee's and Original GGW Debtors' personnel. Id. at 3-4. Wilson then terminated several PSL, Argyle Online, LLC (Argyle Online), and Argyle Media employees. Id. at 4. Based on these assertions, the Trustee requested that the TRO be amended to: 1) explicitly name PSL, Argyle Online, and Wilson as additional persons (Additional Parties or Additional Persons); and 2) require PSL, Argyle Online, and Wilson to show cause why they should not be held in contempt. Id. at 5.

On 5/1/13, the Trustee, Francis, Wilson, PSL, and Argyle Online filed a "Stipulation Resolving Emergency *Ex Parte* Application to Enforce and, to the Extent Necessary, Clarify and Expand Temporary Restraining Order by Specifically Naming Additional Parties" (Stipulation). AP Docket #30. Wilson— both individually and as the manager of PSL and Argyle Online—and Francis initialed each page and signed the Stipulation. Id. at 7-8.

In the Stipulation, Francis, Wilson, PSL, and Argyle Online agreed not to:

    3.  [T]ake any action that . . . impede[s] or attempt[s] to impede the access of the [Original GGW] Debtors, the Trustee, or any of the

---

[6] Francis and the Trustee stipulated to continue the First OSC Hearing several times. The First OSC Hearing was eventually held on 10/22/13. AP Docket #s 21, 23, 44, 47, 52, 54, 56, 58.

[7] PSL subleased the Premises to the Original GGW Debtors. Ex Parte at 3 ("[EOP] [is] the lessor of office space to [PSL] (which . . . in turn subleases office space to the [Original GGW] Debtors)."). After the Trustee was appointed, PSL and the Trustee agreed that the Debtors would continue to use the Premises and pay rent directly to the Landlord. AP Docket #30 at 3-4.

Trustee's and/or  the [Original GGW] Debtors' personnel . . . from accessing, utilizing, conducting business and other similar activities at the Premises.  Without limitation, this paragraph prohibits . . . entering the Premises save and except with the express permission of the Trustee.

4.    [T]ake any action that will interfere with the Trustee's and/or the [Original GGW] Debtors' ability to utilize personnel . . . performing services for the Trustee or the [Original GGW] Debtors . . . or communicat[e] with them in any way absent express permission of the Trustee.  The preceding is intended to specifically prohibit abusive communications, telephone calls, and any and all other written . . . communications of any kind . . . .

. . .

7.    [] Francis and the Additional Persons shall promptly communicate to Landlord[8] the terms of this Stipulation and any order approving it.  Landlord may take actions in good faith in reliance upon this Stipulation and any order approving it without liability to [] Francis and/or the Additional Persons.  The Trustee may make payments directly to Landlord and Landlord shall not thereby have privity of contract or estate with the Trustee or the [Original GGW] Debtors, this payment arrangement being made solely for the convenience of the Trustee and Landlord . . . .

. . .

10.    a.    The Trustee is entitled to immediate possession of the following three automobiles, which are property of the [Original GGW] Debtors: (i) a 2007 Cadillac Escalade with a vehicle identification number ("VIN") ending 5603; (ii) a 2012 Bentley Flying Spur with a VIN ending 0815; and (iii) a 2008 Mercedes Benz SL65 with a VIN ending 0237.[9]  The preceding automobiles (each a "Vehicle" and, collectively,

---

8    The Stipulation defines the "Landlord" as "CA-The Tower Limited Partnership" (The Tower). Stipulation at 2.  The Court notes that the Ex Parte identified EOP as the "lessor of office space to [PSL]." Ex Parte at 3.  During the 7/10/14 Hearing (defined below), Nicholas Troszak (Troszak) explained that The Tower "is what the building is called," EOP "is the management company," the Trustee paid rent to EOP, and met with EOP "for any issues."  BK Docket #623 at 56:2-12. Because the parties have not drawn any distinction between EOP and The Tower, the Court will refer to EOP and The Tower individually and collectively as "the Landlord" and will draw no distinction between the two.

9    Francis crossed out the words "a 2008 Mercedes Benz SL65 with a VIN ending 0237" and scribbled in the margin "only have 2 cars."  Stipulation at 5.  Later, Francis crossed out that note and wrote "only 1 car."  Id.

the "Vehicles") are currently in [PSL's] and/or [] Francis's possession.

b.      [PSL] and/or [] Francis may continue in possession of the Vehicles provided they maintain the Vehicles in good condition and . . . pay the Trustee $750 per month ($250 per month per Vehicle) for the use of the Vehicles commencing May 1, 2013.[10] . . . If payment is not timely made, then [] Francis and/or [PSL] shall promptly deliver to the Trustee . . . the Vehicles and all keys to the Vehicles.  If not promptly delivered, then the Trustee may, on 24 hours' notice, obtain an order from the Bankruptcy Court commanding and permitting the repossession by the Trustee of such Vehicles.

c.      Neither [PSL] nor [] Francis nor the Additional Persons shall move for relief from the automatic stay to terminate the Trustee's month-to-month lease on or occupancy of the Premises until on or after July 31, 2013.  The Trustee may give 30 days' notice of his intent to vacate the Premises at any time.

        . . .

e.      In the event the Trustee gives notice of his intent to vacate the Premises, [PSL] and [] Francis shall, upon the actual vacation of the Premises by the Trustee deliver to the Trustee or his designated representative the Vehicles and all keys to the Vehicles.

Id. at 5-6.

On 5/2/13, the Court entered an "Order Approving Stipulation Resolving Emergency *Ex Parte* Application to Enforce and, to the Extent Necessary, Clarify and Expand Temporary Restraining Order by Specifically Naming Additional Parties," (Consent Order), which provided that:

1.      The Stipulation is approved in its entirety.  The failure to state any term of the Stipulation below shall not constitute any non-approval of such term.

        . . .

4.      [N]either [] Francis nor any of the Additional Persons nor . . . others acting in concert with . . . any of the preceding will take any action that will impede or attempt to impede the access of the [Original

---

[10]    Francis crossed out $750 and wrote $500.  Stipulation at 4.

GGW] Debtors, the Trustee, or any of the Trustee's and/or the [Original GGW] Debtors' personnel, [E]mployees, agents, attorneys or any other persons working with or for them from accessing, utilizing, conducting business and other similar activities at the Premises. . . .

5.   [N]either [] Francis nor any of the Additional Persons nor . . . others acting in concert with . . . any of the preceding will take any action that will interfere with the Trustee's and/or the [Original GGW] Debtors' ability to utilize personnel currently performing services for the Trustee or the [Original GGW] Debtors, including but not limited to those personnel "leased" from [PSL] and/or Argyle [Online]. . . . [T]his paragraph prohibits terminating the employment of any person or individual presently employed by [PSL] or Argyle [Online] providing services to the Trustee and/or the [Original GGW] Debtors, not processing payroll for such individuals, or communicating with them in any way absent express permission of the Trustee. . . .

. . .

7.   Any entity or person . . . that acts in violation of the TRO or this Stipulation shall be jointly and severally liable for all damages caused by such conduct, as well as all legal fees and costs incurred by the Trustee or the [Original GGW] Debtors in redressing such conduct. . . .

8.   Landlord may take actions in good faith in reliance upon the Stipulation and this order approving it without liability to [] Francis and/or the Additional Persons.  The Trustee may make payments directly to Landlord and Landlord shall not thereby have privity of contract or estate with the Trustee or the [Original GGW] Debtors, this payment arrangement being made solely for the convenience of the Trustee and Landlord. . . .

. . .

11.  The Trustee is entitled to immediate possession of . . . : (i) a 2007 Cadillac Escalade with a vehicle identification number ("VIN") ending 5603; and (ii) a 2012 Bentley Flying Spur with a VIN ending 0815.  The [Vehicles] are currently in [PSL's] and/or [] Francis's possession.

12.  [PSL] and/or [] Francis may continue in possession of the Vehicles provided they maintain the Vehicles in good condition and shall pay

the Trustee $500 per month ($250 per month per Vehicle) for the use of the Vehicles commencing May 1, 2013. . . .

13.    Neither [PSL] nor [] Francis nor the Additional Persons shall move for relief from the automatic stay to terminate the Trustee's month-to-month lease on or occupancy of the Premises until on or after July 31, 2013. The Trustee may give 30 days' notice of his intent to vacate the Premises at any time.

    . . .

15.    In the event the Trustee gives notice of his intent to vacate the Premises, [PSL] and [] Francis shall, upon the actual vacation of the Premises by the Trustee deliver to the Trustee or his designated representative the Vehicles and all keys to the Vehicles.

AP Docket #32 at 2-5. The Consent Order was "approved as to form" by counsel for Francis, Wilson, PSL, and Argyle Online, and by counsel for the Trustee. Id. at 5.

### iii.    Preliminary Injunction

Following a series of stipulations, on 6/7/13, the Court entered an order continuing the First OSC Hearing to 10/22/13 (10/22/13 Hearing) and setting a 9/24/13 deadline for filing a response to the First OSC. AP Docket #58. On 10/1/13, Francis filed an untimely response to the First OSC (Untimely Response). AP Docket #79. On 10/2/13, the Court issued an order stating that pursuant to Local Bankruptcy Rule (LBR) 9013-1(h), it would not consider the Untimely Response and that it deemed Francis's failure to timely file an opposition to be consent to granting a preliminary injunction. AP Docket #82.

During the 10/22/13 Hearing, the parties were given an opportunity to be heard. At the conclusion of the 10/22/13 Hearing, the Court entered a "Preliminary Injunction" (PI),[11] which provided, in pertinent part, that:

1.    Until the earlier of (i) the conclusion of the above-captioned adversary proceeding or (ii) the modification or dissolution of [the PI], [] Francis and his agents, servants, employees, attorneys, and those persons in concert or participation with him, are HEREBY ENJOINED AND RESTRAINED from:

---

[11]   Neither Francis, Wilson, PSL, nor Argyle Online appealed the PI, and the time for appeal has expired. Federal Rule of Bankruptcy Procedure (FRBP) 8002(a); see In re Excel Innovations, Inc., 502 F.3d 1086, 1092 (9th Cir. 2007) (stating that an "injunction granted by the bankruptcy court constitutes an appealable final decision"); In re Fabtech Indus., Inc., 2010 WL 6452908, at *3 (B.A.P. 9th Cir. 2010) ("[A]n injunction granted by the bankruptcy court is a final decision . . . .").

- Communicating with [the Debtors'] [E]mployees.  Enjoined communications shall include, without limitation, calling, e-mailing, texting, faxing, or otherwise contacting, engaging with, or attempting to exercise influence or control over any [E]mployees rendering services to [the Debtors].

- Coming within 100 feet of [the Debtors'] offices (located at 10940 Wilshire Boulevard, Los Angeles, California 90024 (the "Premises")) or [their] [E]mployees.

- Interfering with the Trustee's control of [the Debtors'] assets (including, without limitation, any servers or computers that have [the Debtors'] electronically stored information).

- Threatening or harassing [E]mployees of [the Debtors] or Argyle Online . . . .

2.   [] Francis, the Additional Persons and . . . others acting in concert with all or any of them are hereby ENJOINED AND RESTRAINED from any action that will impede or attempt to impede the access of the Debtors, the Trustee, or any of the Trustee's and/or Debtors' personnel . . . from accessing, utilizing, conducting business and other similar activities at the Premises.  Without limitation, this paragraph prohibits changing locks or combinations, activating or deactivating parking, elevator and suite keys and key cards or entering the Premises save and except with the express permission of the Trustee.

3.   [] Francis, the Additional Persons  and . . . others acting in concert with all or any of them are hereby ENJOINED AND RESTRAINED from taking any action that will interfere with the Trustee's and/or the Debtors' ability to utilize personnel currently performing services for the Trustee or the Debtors.  Without limitation, this paragraph prohibits communicating with any of the Debtors' [E]mployees in any way absent express permission of the Trustee.  The preceding is intended to specifically prohibit abusive communications, telephone calls, and any and all other written or oral communications of any kind . . . .

. . .

5.   [A]ny entity or person . . . that acts in violation of this [PI] shall be jointly and severally liable for all damages caused by such conduct, as well as all legal fees and costs incurred by the Trustee or the Debtors in redressing conduct. . . .

. . .

8.  Each and every provision of the Consent Order is made part of this [PI] as if set forth herein.

AP Docket #86.

c.  Sale

On 4/23/14, the Court entered an order (Sale Order) approving the sale of substantially all of the Debtors' assets to GGW Acquisition, LLC (GGWA) for $1,825,000 (Sale).  BK Docket #s 551, 552.  The Sale closed on 4/28/14.  5/8/14 Declaration of Jonathan Weiss, BK Docket #559, ¶ 5.

II.  Contempt Proceedings

a.  Contempt Motion

On 6/2/14, the Trustee filed a "Motion for Issuance of Order to Show Cause why Joseph R. Francis and Perfect Science Labs, LLC Should not be Held in Contempt," in which he asserted the following (Contempt Motion).  BK Docket #570.  On 4/28/14, the Trustee's counsel sent Francis's and PSL's counsel a letter, which noted that pursuant to the Stipulation and the Consent Order, the Trustee "may give 30 days' notice of his intent to vacate the Premises at any time" (4/28/14 Letter).  6/2/14 Declaration of Matthew C. Heyn, BK Docket #570 (Heyn 6/2/14 Decl.) ¶ 5, Ex. B.  In the 4/28/14 Letter, the Trustee's counsel stated that he and the Debtors would vacate the Premises by noon on 5/28/14, and that "[a]fter that time, the Trustee and the Debtors will not be liable and will not pay rent for use of the Premises." Id.  The Trustee's counsel did not receive a response to the 4/28/14 Letter. Id. ¶ 5.

On 5/2/14, the Trustee's counsel sent another letter to Francis's and PSL's counsel (5/2/14 Letter). Id. ¶ 6, Ex. C.  In addition to repeating the Trustee's intent to vacate the Premises on 5/28/14, the 5/2/14 Letter referenced Francis's obligation to return the Vehicles to the Trustee by 5/28/14, pursuant to the Stipulation and Consent Order. Id.  The Trustee's counsel requested delivery of the Vehicles by noon on 5/28/14. Id.  The Trustee's counsel did not receive a response to the 5/2/14 Letter. Id. ¶ 6.

On 5/9/14, at approximately 3:50 p.m., Francis and Wilson entered the Premises "without invitation," 5/22/14 Declaration of Tristen Lazareff, BK Docket #570 (Lazareff 5/22/14 Decl.) ¶ 4, and "shouted profanities at . . . [GGWA's] employees while acting in a physically threatening manner." Id. ¶ 5.  Specifically, Francis moved "close" to employees, shouted profanities at the employees, and told the employees they were no longer "legally allowed to be on the [P]remises." Id.

Several employees reminded Francis that his presence at the Premises was a violation of a court order and asked Francis and Wilson to leave. Id. ¶ 6.  They refused to do so. Id.  The employees then called the police. Id.  During this time, Francis "screamed" and "demanded" entrance to his former office. Id. ¶ 7.  At approximately 4:00 p.m., the Landlord arrived at the Premises and warned Francis that his presence was in violation of a court order. Id. ¶ 8.  Francis then became "verbally abusive and acted in a physically threatening manner" toward the Landlord. Id. ¶ 9.  Francis and Wilson left the Premises after learning that the police were en route. Id. ¶ 10.

On 5/9/14 at 4:54 p.m., the Trustee's counsel sent an email to Francis's and PSL's counsel, which stated:

> I am informed that today [] Francis came to the Debtors' offices (10940 Wilshire Blvd., Suite 1000, Los Angeles, California) today [sic] and attempted to make trouble.  I understand that he was screaming at employees and otherwise being disruptive.  The building has removed Francis from the [P]remises.

> As you know, the Debtors are in the process of vacating the offices and will be out by May 28.  The Debtors have paid rent through May 28.  Until then, the Debtors still occupy the location.  Under the terms of the attached [PI], [] Francis is prohibited from "[c]oming within 100 feet of GGW's offices (located at 10940 Wilshire Boulevard, Los Angeles, California 90024 (the 'Premises')) or its [E]mployees."  Today's actions are in direct violation of the [PI] and may constitute contempt of Court.  The Trustee reserves his rights with respect thereto.

Heyn 6/2/14 Decl. ¶ 7, Ex. D (5/9/14 Email).  The Trustee's counsel did not receive a response to the 5/9/14 Email. Id. ¶ 7.  Further, on 5/15/14, the Landlord's counsel sent a letter to Francis's and PSL's counsel stating that:

> [A]s you . . . know, last Friday [] Francis of PSL violated the October 22, 2013 [PI] when he came to the Premises and demanded access to space . . . .  Notwithstanding [] Francis'[s] repeated statements on several different occasions last Friday afternoon to my client and/or me that the [PI] was no longer in force, that the Trustee was no longer in possession of the Premises, and that he had a "right" to enter the Premises, none of that is true.  The [PI] remains in place, the Trustee remains in possession of the Premises until May 28, 2014, and [] Francis has no rights to enter the Premises at this time, absent further order from the Court.  Landlord is also subject to the [PI].

> . . .

Id. ¶ 9, Ex. E (5/15/14 Landlord Letter).

On 5/16/14 at approximately 5:40 p.m.—a week after Francis and Wilson first entered the Premises—Francis and Wilson entered the Premises again "without invitation." Lazareff 5/22/14 Decl. ¶ 11; 6/17/14 Declaration of Joseph Francis, BK Docket #601 (Francis 6/17/14 Decl.) ¶ 9; 6/17/14 Declaration of Abbey Wilson, BK Docket #601 (Wilson 6/17/14 Decl.) ¶ 9.  A security guard attempted to escort Francis off the Premises, but Francis refused and began threatening the guard and employees.  Lazareff 5/22/14 Decl. ¶ 12.  Adam Levin (Levin), Vice President of GGWA, rushed to the Premises after employees informed him of Francis's presence.  5/22/14 Declaration of Adam Levin, BK Docket #570 (Levin 5/22/14 Decl.) ¶¶ 2, 4.  Francis began spewing profanities and making derogatory and offensive statements to Levin.  Id. ¶¶ 5, 6.  Francis also pushed Levin "violently."  Id. ¶ 7.  Several employees "were reduced to tears."  Lazareff 5/22/14 Decl. ¶ 13.  The police then arrived and detained Francis.  Id.

On 5/28/14, the Trustee's counsel emailed Francis's and PSL's counsel to notify him that the Debtors had completely vacated the Premises (5/28/14 Email). Heyn 6/2/14 Decl. ¶ 10, Ex. F.  In the 5/28/14 Email, the Trustee's counsel stated that he would be amenable to a stipulation to terminate the PI related to the Premises—with one caveat—so that PSL could be comfortable that anyone it permitted may occupy the Premises.  Id.  The caveat related to the Vehicles and the Trustee reiterated Francis's and PSL's obligation to return the Vehicles.  Id. The Trustee's counsel further requested that Francis's and PSL's counsel notify him when and how his clients intended to return the Vehicles and stated that the Trustee would seek relief from the Court if Francis and PSL did not provide an acceptable proposal.  Id.

In the Contempt Motion, the Trustee argued that Francis blatantly violated the PI and Consent Order by: 1) refusing to deliver the Vehicles to the Trustee; 2) repeatedly entering the Premises; and 3) interfering with the removal of property sold to GGWA.  Contempt Motion at 13-15.  The Trustee requested that the Court issue an order to show cause, set a date for a contempt hearing, and enter an order holding Francis and PSL in civil contempt.  Id. at 18.  The Trustee sought: 1) return of the Vehicles; 2) sanctions of $5,000 per day after entry of a contempt order until Francis and PSL return the Vehicles; and 3) the Trustee's attorneys' fees and costs incurred due to Francis's and PSL's conduct.  Id.

      b.  Second OSC

Pursuant to LBR 9020-1(b), any objection to the issuance of an order to show cause must be filed within seven days.  "If a written explanation is not timely filed and . . . served, the [C]ourt may conclude that there is no objection to issuance of the order to show cause."  LBR 9020-1(d)(1).  Neither Francis nor PSL filed a timely response to the issuance of an order to show cause.

On 6/10/14, the Court entered an "Order to Show Cause Why Joseph R. Francis and Perfect Science Labs, LLC Should not be Held in Contempt" (Second OSC), finding that "cause exists to believe that [] Francis and [PSL] have violated and continue to violate the Consent Order and the [PI]."  BK Docket #585.  The Second OSC provided that:

A.   [] Francis and [PSL] (through its authorized and knowledgeable designee) shall appear before this Court at a hearing on July 10, 2014, at 10:00 a.m., [(7/10/14 Hearing)] . . . to show cause, if any, why they should not be held in contempt of Court for the alleged violations of the Consent Order and [PI].   Pursuant to [LBR] 9013-1(i), all parties are notified that the Court may permit any party to submit witness testimony at the [7/10/14] Hearing.

B.   On or before June 19, 2014 at 12:00 noon, [] Francis and [PSL] shall file and serve a written explanation, if there is an explanation, why they should not be held in contempt of Court for the alleged violations of the Consent Order and [PI].  During the [7/10/14] Hearing, the Court may treat as true any uncontroverted facts established by declaration and limit testimony to controverted facts only.

C.   [] Francis's and [PSL]'s written explanation shall address the allegation in the [Contempt] Motion that [] Francis and [PSL] are in continuing violation of Paragraph 15 of the Consent Order and Paragraph 8 of the [PI] due to their failure to return to the Trustee two vehicles (together, the "Vehicles"): (i) a 2007 Cadillac Escalade with a vehicle identification number ("VIN") ending 5603, and (ii) a 2012 Bentley Flying Spur with a VIN ending 0815.

D.   [] Francis's written explanation also shall address the allegation in the [Contempt] Motion that [] Francis violated the [PI] by repeatedly entering the Debtors' former office located at 10940 Wilshire Boulevard, Los Angeles, California 90024 (the "Premises") on May 9, 2014 and May 16, 2014, and, while at the Premises, assaulted, battered, and harassed several individuals.

E.   If [] Francis and/or [PSL] files such written explanation, the Trustee may file an optional response on or before June 26, 2014 at 12:00 noon.  The Trustee may submit supplemental evidence of the damages caused by [] Francis's and [PSL's] alleged violation of the Consent Order and [PI] in his optional response or at the [7/10/14] Hearing.

Second OSC at 2-4.

c. Response

On 6/19/14, Francis and PSL timely filed a "Response to Order to Show Cause . . ." (Response), in which they argued that on 5/9/14 and 5/16/14,[12] when Francis and Wilson entered the Premises, the "Debtors were no longer" at that location. BK Docket #601 at 7. Specifically, Francis and PSL contended that after the 4/28/14 Sale, GGWA and its employees—and not the Debtors—occupied the Premises. Id. Therefore, according to Francis and PSL, the PI no longer applied to the Premises, because the purpose of the PI was to protect the Debtors' Employees. Id. at 4, 7.

Francis and PSL highlighted that GGWA applied for a Workplace Violence Restraining Order and argued that under California Code of Civil Procedure (CCP) § 527.8, only an employer may apply for such a restraining order to prevent the threat of violence against its employees. Id. at 6.[13] Francis and PSL asserted that the Trustee and the Trustee's counsel were attempting improperly to extend the PI to GGWA's hostile occupancy of the Premises. Id. According to Francis and PSL, the Trustee's payment of rent through 5/28/14 was not sufficient for the PI to remain in force after the Sale. Id. at 6-7.

Alternatively, Francis and PSL alleged that even if the Court interpreted the PI differently, they could not be held in civil contempt because their actions were based on a reasonable interpretation of the PI. Response at 7-8. To support this argument, they cited In re Dual Deck Video Cassette Recorder Antitrust Litigation, 10 F.3d 693, 695 (9th Cir. 1993), which states that "a person should not be held in contempt if his action '"appears to be based on a good faith and reasonable interpretation of the [court's order].'"'"

Francis and PSL then acknowledged that "[a]lthough not relevant to the issue of whether the [PI] was violated," the interaction between Francis and GGWA's employees was very different from what was represented in the Lazareff 5/22/14 Decl. and the Levin 5/22/14 Decl. Response at 8. According to Francis, GGWA's officers and employees were the "aggressors and even physically assaulted [] Wilson, who is pregnant with twins." Id.; Francis 6/17/14 Decl. ¶¶ 8-10; Wilson 6/17/14 Decl. ¶¶ 10-12.

---

[12]   The Response incorrectly asserted that the second time Francis and Wilson went to the Premises was 5/14/14; it was actually 5/16/14. Response at 4; see Lazareff 5/22/14 Decl. ¶ 11; Levin 5/22/14 Decl. ¶ 4; Francis 6/17/14 Decl. ¶ 9.

[13]   Francis also highlighted that PSL was the lessee of the Premises, that the Debtors had occupied the Premises "hostilely" against PSL's wishes, and that the PI kept PSL and Francis, "who had an office at PSL, out of their own offices." Response at 6. According to Francis and PSL, on 5/9/14 and 5/16/14, Francis and Wilson were at the Premises for the "legitimate purpose of confirming that personal property of PSL and Francis was not being removed from PSL's offices." Id.; Francis 6/17/14 Decl. ¶ 7; Wilson 6/17/14 Decl. ¶ 9.

Francis and PSL asserted that even if the Court were to find that they violated the PI, the costs and fees incurred by the Trustee "with respect to [the Contempt Motion]" should not be awarded because civil contempt sanctions cannot be punitive. Response at 8. Francis claimed that the Debtors and GGWA had vacated the Premises, there was no need to seek future compliance, and the Trustee had not presented any evidence of losses to the Debtors. Id.

Finally, Francis alleged that he and PSL were unable to produce the Vehicles as required by the Consent Order because the Vehicles were taken on 5/23/14 without his or PSL's consent. Id. at 8-9. Francis claimed that agents of Terry Williston (Williston) and his company, DGL ITSMO SA DE VC (DGL) took the Vehicles in Mexico, "in execution of [Williston's and DGL's] claimed rights to such Vehicles" based on the Debtors' alleged breach of an agreement "whereby the Debtors were to conduct a number of promotional events" at a Mexican strip club owned by DGL. Id. at 9; Francis 6/17/14 Decl. ¶ 12. According to Francis, he was "powerless" to retrieve the Vehicles under Mexican law and Williston's agents refuse to return them. Francis 6/17/14 Decl. ¶ 12.

       d. Reply

On 6/26/14, the Trustee filed a "Reply in Support of Motion to Hold Joseph R. Francis and Perfect Science Labs, LLC in Contempt" (Reply). BK Docket #605. In the Reply, the Trustee asserted that: 1) Francis's 5/9/14 and 5/16/14 entry onto the Premises violated the clear and unambiguous terms of the PI; 2) Francis's testimony regarding the Vehicles was self-serving, uncorroborated, and could not prove that the Francis was unable to comply with the Consent Order; and 3) under the circumstances, compensatory damages and sanctions were appropriate. BK Docket #605 at 3, 5, 8.

The Trustee argued that there is only "one reasonable interpretation of the [PI]: it prohibited Francis from coming within 100 feet of the Premises." Id. at 5. According to the Trustee, Francis did not dispute that the Trustee's counsel notified Francis's counsel that the Debtors would vacate the Premises on 5/28/14, and that the Trustee paid rent for the Premises through 5/28/14. Id. at 4. On 5/9/14, after Francis was removed from the Premises, the Trustee's counsel notified Francis's counsel that the Debtors had paid rent through 5/28/14, until then the Debtors occupied the Premises, and Francis's actions that day were "in direction violation of the [PI]." Id.; Heyn 6/2/14 Decl. ¶ 7, Ex. D. Further, on 5/15/14, the Landlord's counsel also advised Francis's counsel that the Trustee would remain in possession of the Premises until 5/28/14, the PI remained in place, and Francis "has no rights to enter the Premises at this time, absent further order from the Court." Reply at 4; Heyn 6/2/14 Decl. ¶ 9, Ex. E.

The Trustee next asserted that even if the Premises had to be the Debtors' offices on 5/9/14 and 5/16/14, Francis violated the PI because the Premises were the Debtors' offices until 5/28/14. Reply at 3. The Trustee permitted GGWA to

use the Premises to facilitate the smooth transfer of assets, but the Trustee and the Debtors nevertheless remained in possession of the Premises. Id. at 3 n.3. The Debtors were required to continue their occupancy of the Premises to receive mail and payments for pre-closing sales, and many of the Debtors' records "continued to be at the Premises." Id.

The Trustee went on to argue that Francis's own testimony demonstrates that he knew the Trustee had not vacated the Premises on 5/9/14 or 5/16/14. Id. at 4. The Trustee noted that the Consent Order required Francis to return the Vehicles "'upon the actual vacation of the Premises by the Trustee.'" Id.; Consent Order ¶ 15. According to the Trustee, if Francis and PSL believed that the Debtors had vacated the Premises, then he was required to return the Vehicles. Reply at 4-5. And, Francis did not explain why he did not return the Vehicles before he and Wilson entered the Premises on 5/9/14 and 5/16/14. Id.

In terms of the Vehicles, the Trustee argued that Francis's explanation and credibility were suspect and he had not demonstrated that it was impossible for him to comply with the Consent Order and PI. Id. at 5-6. The Trustee contended that the Response, the Francis 6/17/14 Decl., and the Wilson 6/17/14 Decl. are "devoid of any detail or documentary evidence corroborating Francis's remarkable story," including any evidence of the alleged agreement between the Debtors and Williston, the applicable Mexican law under which Francis is "powerless" to retrieve the Vehicles, information about why the Vehicles were in Mexico in the first place, and the address of Williston and DSL. Reply at 6-8.

The Trustee argued that if Francis's explanation were true, he would have notified the Trustee after the Trustee's repeated inquiries about the Vehicles. Id. at 7. Instead, Francis never told the Trustee that Williston took the Vehicles; the Trustee only learned about it when he received the Response. Id. Based on the dearth of evidence, the Trustee argued that Francis failed to demonstrate that he "exhausted all avenues to comply with the order" to satisfy his burden of proving impossibility. Id. And, the Trustee argued that Francis has "a well-established history of providing self-serving false evidence to this Court by declaration to manufacture facts that would frustrate the Trustee's clear right to relief," citing the Court's final ruling on the Trustee's motion for summary judgment (MSJ Ruling) in Argyle Online, LLC v. Neilson, 13-01552-SK, Docket #137 at 37 (finding that a declaration submitted by Francis fell within the purview of the sham affidavit rule). Reply at 6.[14]

The Trustee also highlighted an inconsistency between Francis's and PSL's Opposition and the Francis's 6/17/14 Decl. regarding where the Vehicles were

---

[14]   Path Media Holdings, LLC (Path), Francis, Argyle Media Sales, LLC, Argyle Online, and Fab Films, LLC appealed the MSJ Ruling to the District Court.  On 3/6/14, the District Court affirmed the MSJ Ruling (DC Order).  Path Media Holdings, LLC, et al. v. GGW Brands, LLC, et al. (In re GGW Brands, LLC), 13-7666-ABC, Docket #46.  Path appealed the DC Order to the Ninth Circuit Court of Appeals on 3/10/14 (9th Circuit Appeal).  Path Media Holdings, LLC v. Neilson, 14-55381, Docket #1.  The 9th Circuit Appeal is currently pending.

parked, and where Williston, DSL and the strip club were located.  Reply at 8.  In the Francis 6/17/14 Decl. ¶ 12, Williston and DSL were described as being from Guadalajara, Mexico, the strip club where the promotional events were supposed to be conducted were in Guadalajara, and the Vehicles were parked in Guadalajara when then were seized.  In contrast, the Response indicated that "[t]he explanation offered by [Francis for why he was unable to turn over the Vehicles] in his Declaration bears repeating in its entirety here," and indicated that the Vehicles were seized from Puerto Vallarta, Mexico, the strip club was located in Puerto Vallarta, and Williston and DSL were from Puerto Vallarta.  Response at 9.[15]  The Trustee concluded that this discrepancy revealed how Francis, PSL, and their counsel "cannot keep their stories straight."  Reply at 8.  Although Francis and PSL asserted that DSL and/or Williston were purported creditors of the Debtors, the Trustee noted that neither DSL nor Williston filed a proof of claim in any of the Debtors' cases and the Debtors' schedules did not list any claim or contract with DSL or Williston.  Id. at 7.

The Trustee asserted that Francis admitted compensatory damages are appropriate to compensate for losses caused by a contemnor's past noncompliance and to coerce future compliance.  Id. at 8.  The Trustee believed Francis's complaint is that the Trustee did not present evidence of his losses resulting from Francis's conduct.  Id. at 8-9.  The Trustee highlighted, however, that he was authorized to submit additional evidence "of the damages caused by" Francis's and PSL's alleged violation of the Consent Order and PI either in the Reply or at the 7/10/14 Hearing.  Second OSC at 3-4.  The Trustee submitted evidence demonstrating that his counsel incurred $40,228 in fees through 6/23/14 and anticipated incurring an additional $20,000 in fees through the 7/10/14 Hearing.  Reply at 8-9; 6/26/14 Supplemental Declaration of Matthew Heyn, BK Docket #605 (Heyn 6/26/14 Decl.) ¶ 6, Exs. G, H.  The Trustee also highlighted that in the Opposition, Francis did not object to sanctions of $5,000 per day.  Reply at 9.  Therefore, the Trustee concluded that these sanctions were appropriate.  Id.

        e.  Williston 7/7/14 Decl.

On 7/8/14, Francis and PSL filed a "Request for Consideration of Declaration of Terry Williston in Support of [the Response]," attaching a 7/7/14 Declaration of Terry Williston (Williston 7/7/14 Decl.) (Request).  BK Docket #620.  In the

---

[15]  On 7/1/14, Francis and PSL filed a "Notice of Errata and Correction to Response . . ." (Errata).  BK Docket #617.  The Errata asserted that Francis's and PSL's counsel drafted the Response and the Francis 6/17/14 Decl. based on statements Francis made to him and he "assumed that the events took place in Puerto Vallarta, Mexico because that is where [Francis] spends a significant amount of time."  Errata at 2.  When Francis reviewed the Francis 6/17/14 Decl., he informed his counsel that "the events occurred in Guadalajara, Mexico . . . and that the creditor was also based in Guadalajara, Mexico."  Errata at 2.  But, Francis's and PSL's counsel, "through oversight[,] neglected to change the language in the body of" the Response.  Id.  Francis and PSL did not provide any admissible evidence substantiating this explanation for the discrepancy.  In re Hurley, 258 B.R. 15, 23 (Bankr. D. Mont. 2001) ("[A]n attorney's argument is not evidence.").

Request, Francis and PSL asserted that they "just received" the Williston 7/7/14 Decl., and requested that the Court consider it "even though submitted after the deadline" for filing the Response. BK Docket #620.

      f.  7/10/14 Hearing

During the 7/10/14 Hearing, the Trustee presented live testimony from Levin and Troszak. BK Docket #623 at 15-42, 47-70. The Trustee also showed a surveillance video from outside of the building where the Premises was located, as well as video from inside and immediately outside of the Premises. Id. at 16-20, 43-45. Francis and PSL presented no live testimony but they showed a video, with audio, of the inside and immediately outside of the Premises. Id. at 80. Both sides stipulated to the authenticity and admissibility of the video evidence. Id. at 13:16-14:2.

Levin, who is the vice president of GGWA, testified that on 5/9/14, the Debtors were "conducting business" at the Premises, including "cutting checks [and] doing their accounting." Id. at 29:3-8. Levin estimated that on 5/9/14, the Debtor had more than 100 boxes at the Premises, they maintained all of their records at the Premises, and they were using two or three of the 12, 13 offices, as well as the storage at the Premises. Id. at 29:3-14, 30:19-31:1. According to Levin, on 5/16/14, GGWA was "utilizing the space of the [Debtors] as part of the transition," and several of GGWA's employees "who were there and were also doing work for the [Debtors] at that time." Id. at 15:17-16:1.

Troszak, a financial advisor and bankruptcy accountant employed by the Trustee, testified that the Debtors had no offices other than the Premises during their bankruptcy cases, they paid rent for the Premises through 5/28/14, and they vacated the Premises on that date. Id. at 47:17-20, 48:4-8, 49:11-25. He stated that the Sale did not include all of the Debtors' property. Id. at 51:14-19. According to Troszak, the Debtors did not sell "[a]ccounting records, documents, [and] four cars." Id. at 51:18-19.[16] Regarding the documents, Troszak stated that the Debtors had their electronic files, QuickBooks, hard copy records, and Employee files at the Premises and those documents were at the Premises through 5/16/14. Id. at 52:8-14, 60:10-14. Troszak testified that the documents were moved "near the end," and that he picked up the last of the Debtors' documents on 5/28/14. Id. at 52:17, 53:1-3. Troszak indicated that the Cars were also parked at the Premises and remained there through the majority of May. Id. at 52:2-6.

Troszak further testified that the Debtors were conducting business at the Premises in May 2014. Id. at 52:17-54:2. Troszak explained that "customers pay 30, 60, 90 days after they get product, so [the Debtors] still had revenues

---

[16]   Troszak referred to the Vehicles as well as two other cars, a Volkswagen Routan and a Toyota Prius. The Court refers to the Volkswagen Routan and the Toyota Prius collectively as "the Cars".

coming in, expenses need to be paid, so they were handling all that" at the Premises on 5/9/14 and on 5/16/14. Id. at 52:20-21, 53:18-54:2. Also during May 2014, the Debtors continued "administering the estate" at the Premises, and the Debtors' mail still came to the Premises. Id. at 53:8-10, 57:23-24.

In terms of the Employees, Troszak testified that during May 2014, the Debtors were using "individuals at [the Premises]." Id. at 53:8-10. Troszak mentioned that there was a clause in the sale agreement between the Debtors and GGWA indicating that before and after the closing of the Sale, employees would be used "to ensure a smooth transition from . . . the [D]ebtors to the new owners." Id. at 57:16-21. According to Troszak, the employees had "been doing it for so long and we kept them, you know, doing normal operations. We tried to make it as smooth as possible, the transition period, so we kept all of them . . . doing the same and just accounted for it. And then we would do a reconciliation every two weeks on who wrote who and we'd true up." Id. at 53:11-17; see id. at 56:13-16 (Troszak clarified that the reconciliation of who owed whom was between the Debtors and GGWA.[17]). Although the Debtors "were not paying individuals, . . . individuals were doing work for [the Debtors] at [the Premises]." Id. at 57:12-13. Troszak stated that after the Sale, he "worked quite a bit with the employees" as he had before the Sale "to make sure revenues were coming in." Id. at 57:21-23. On cross-examination, Troszak stated that although the Debtors were not paying the employees working at the Premises, and he did not consider them employees because the Debtors were not paying workers' compensation insurance or "anything like that," the employees were "conducting work for" the Debtors on 5/9/14 and 5/16/14. Id. at 66:20-67:2.

Troszak also stated that before the 7/10/14 Hearing, he reviewed all of the Debtors' records. Id. at 48:21-49:2. He testified that the Debtors' records did not reflect any amount owing to Williston or DGL, and he was not aware of any contract between the Debtors and Williston and/or DGL. Id. at 55:2-7, 68:9-13, 69:4-10. After Francis and PSL filed the Response, Troszak searched the Debtors' records for "contracts or amounts owing" to Williston and DGL, but he did not find anything. Id. at 55:8-15. Troszak also did not find any "contract or receivables [owed] to any Mexican strip clubs." Id. at 55:16-18.

During the 7/10/14 Hearing, the Heyn 6/2/14 Decl., Heyn 6/26/14 Decl., Lazareff 5/22/14 Decl., and Levin 5/22/14 Decl. were all admitted without objection.[18]  BK

---

[17]   Although the transcript of the 7/10/14 Hearing says "DWA," this is a typographical error. A review of the audio from the 7/10/14 Hearing reveals that Troszak stated "GGWA" and not "DWA."

[18]   During the 7/10/14 Hearing, the Trustee's counsel did not seek to admit the 6/2/14 Declaration of R. Todd Neilson, BK Docket #570 (Neilson 6/2/14 Decl.), which was filed in support of the Contempt Motion. BK Docket #570. Francis and PSL did not object to the Neilson 6/2/14 Decl. in the Response or during the 7/10/14 Hearing. The Neilson 6/2/14 was signed by the Trustee under penalty of perjury. BK Docket #570 at 20. Therefore, the Court considered the statements contained in that declaration. Price v. Kramer, 200 F.3d 1237, 1252 (9th Cir. 2000) (stating that a

Docket #623 at 12:2-13:2. The Trustee's counsel moved to strike the Williston 7/7/14 Decl. arguing that: 1) it was not filed timely; and 2) was inadmissible because it was filed under penalty of perjury of the laws of Mexico, and appeared to have been prepared by Francis's and PSL's counsel. BK Docket #623 at 78:14-16, 79:18-20. Also during the 7/10/14 Hearing, the Trustee's counsel sought to strike the Francis 6/17/14 and Wilson 6/17/14 Decl. because: 1) the Second OSC required Francis and PSL to appear at the 7/10/14 Hearing and neither did so; and 2) the Trustee made his witnesses available for cross-examination, but he did not have an opportunity to cross-examine Francis and Wilson. BK Docket #623 at 69:18-70:3.

Francis's and PSL's counsel requested that the Court consider the Williston 7/7/14 Decl. He argued that obtaining the Williston 7/7/14 Decl. was "very hard," Williston "is not a man that wanted to cooperate," and counsel filed the declaration "as soon as [he] got it." BK Docket #623 at 75:12-76:9. Francis's and PSL's counsel also argued that Francis and PSL did not have to personally appear at the 7/10/14 Hearing because: 1) the Second OSC was vague and ambiguous and did not require Francis and PSL to appear at the 7/10/14 Hearing; 2) Francis's and PSL's counsel appeared at the 7/10/14 Hearing as their authorized and knowledgeable designee; 3) LBR 9013-1(i) permits a witness's absence at a first hearing on a motion and allows declarations under penalty of perjury in lieu of oral testimony; and 4) the Trustee's counsel never gave notice of his intent to cross-examine Francis and Wilson at the 7/10/14 Hearing pursuant to LBR 9013-1(i) and the Local Rules of the District Court. BK Docket #623 at 10:11-24, 11:1-11, 70:5-72:21, 73:19-74:4.[19]

The Court indicated that it would not consider the Williston 7/7/14 Decl. because it was untimely and it did not comply with 28 U.S.C. § 1746. BK Docket #623 at 92:15-15. The Court reserved ruling on the Trustee's motion to strike the Francis 6/17/14 and Wilson 6/17/14 Decl., and took the matter under submission. BK Docket #623 at 92:6-9. The Court indicated that it would issue a written ruling within approximately a week of the 7/10/14 Hearing. Id. at 98:6-15.

---

party's failure to object to testimony at trial is deemed waiver of right to raise admissibility issues on appeal); see LBR 9013-1(i)(3) ("In lieu of oral testimony, a declaration under penalty of perjury will be received into evidence.").

[19] Francis and PSL argued that pursuant to the Local Rules of the Central District of California, the Trustee was required to give Francis and PSL 14 days' notice of his intent to cross-examine Francis and Wilson. BK Docket #623 at 71:22-24. Although Central District of California Local Rule (L.R.) 7-8 requires a party to give 14 days' notice of an intent to cross-examine a declarant, that L.R. is not controlling on proceedings in this Court. LBR 1001-1(b)(2) ("The [LBRs] apply to all bankruptcy cases and proceedings . . . pending in the United States Bankruptcy Court for the Central District of California."); In re Flanagan, 999 F.2d 753, 758 n.7 (3d Cir. 1993) (stating that the district court's local rules did not apply to proceedings in bankruptcy); State Bank of India v. Kaliana (In re Kaliana), 207 B.R. 597, 603 (Bankr. N.D. Ill. 1997) (finding that time limits contained in a district court local rule were "inapposite and not applicable" to proceedings before the bankruptcy court).

g. 7/17/14 Ruling and Contempt Order

On 7/17/14, the Court issued its final ruling on the Second OSC (7/17/14 Ruling), in which it provided a detailed analysis of the evidence and arguments presented by both sides. BK Docket #629. In the 7/17/14 Ruling, the Court made the following findings:

- Regarding Francis's and Wilson's entering the Premises on 5/9/14 and 5/16/14, the Trustee presented clear and convincing evidence demonstrating that: 1) the Debtors occupied the Premises on those dates; 2) the Premises was the Debtors' offices on those dates; 3) Francis and PSL knew that the Debtors occupied the Premises on those dates; and 4) Francis and PSL's manager, Wilson, entered the Premises on those dates in violation of paragraph 1 of the PI. BK Docket #629 at 27-28. The Court also found that Francis and PSL did not demonstrate their actions were based on a good faith and reasonable interpretation of the PI. Id. at 28.

- Regarding the Vehicles, the Trustee presented clear and convincing evidence that Francis and PSL had violated the Consent Order and PI by not returning the Vehicles to the Trustee. Id. at 29-30. The Court rejected Francis's and PSL's argument that they were unable to return the Vehicles, explaining that the evidence provided was "both difficult to believe and insufficient to demonstrate impossibility." Id. at 29.

- The Trustee had incurred $40,228 in legal fees through 6/23/14, related to: 1) Francis's and Wilson's entry on to the Premises on 5/9/14 and on 5/16/14; and 2) the Trustee's attempts to recover the Vehicles. Id. at 30.

On 7/18/14, the Court entered an "Order Holding Joseph R. Francis and Perfect Science Labs, LLC in Contempt of Court (Contempt Order). BK Docket #631.[20]

In the Contempt Order, the Court held Francis and PSL in civil contempt for: 1) entering the Premises on 5/9/14 and 5/16/14 in violation of the PI; and 2) not returning the Vehicles after the Trustee vacated the Premises on 5/28/14, in violation of the Consent Order and PI. Contempt Order at 2-3. The Court ordered Francis and PSL to:

1. Immediately return the Vehicles to the Trustee or his designated representative;
2. Pay the Clerk of Court $5,000 for every day after the Contempt Order was entered that the Vehicles were not returned to the Trustee; and

---

[20] On 7/22/14, Francis and PSL appealed the Contempt Order to the District Court. BK Docket #633; Francis v. GGW Brands, LLC et al., 14-5743-FMO, Docket #1. As of 8/4/14, neither Francis nor PSL had moved for a stay pending appeal of the Contempt Order before this Court or the District Court.

3. Immediately pay the Trustee's attorneys' fees and costs in the amount of $40,228 for the period 5/9/14 through 6/23/14.

Id. at 3-4.

The Court also set a continued hearing on 7/31/14 (7/31/14 Hearing). Id. at 4. The Court indicated that during the 7/31/14 Hearing, it would "inquire of the Trustee's counsel and Francis's and PSL's counsel regarding whether Francis and PSL have complied with the [7/17/14] Ruling and this Contempt Order. If they have not, the Court will consider what additional sanctions, if any, *including arrest warrants and civil incarceration for Francis and Wilson,* might be appropriate." Id. (emphasis added).

The Court further ordered the Trustee, by no later than 7/29/14, to file a supplemental declaration with admissible evidence substantiating the amount of attorneys' fees and costs the Trustee incurred from 6/24/2014 through the date the supplemental declaration was filed, as well as the additional attorneys' fees and costs he anticipated incurring to participate in the 7/31/14 Hearing. Contempt Order at 4. The Court stated that during the 7/31/14 Hearing, it would determine the additional amount that Francis and PSL must pay the Trustee for his attorneys' fees and costs incurred from 6/24/14 through the date of the 7/31/14 Hearing. Id.

h. Incarceration Opposition

On 7/28/14 Joseph R. Francis (Francis) and Perfect Science Labs, LLC (PSL) filed an "Opposition to Imposition of Incarceration as Sanction" (Incarceration Opposition). Docket #637. In the Incarceration Opposition, Francis and PSL made essentially three arguments. First, they argued that the bankruptcy court has only civil and not criminal contempt power. Id. at 4. And, they asserted that if the Court issued bench warrants during the 7/31/14 Hearing, it would be improperly exercising criminal, rather than civil contempt, authority. Id. Second, Francis and PSL contended that the Court improperly ignored evidence that they were unable to produce the Vehicles. Id. at 5-7. Third, Francis and PSL argued that it was apparent that the Court was frustrated with Francis's disrespect for the Court's orders and if the Court were to issue an incarceration order, it would be to vindicate this Court's authority, which Francis argued would result in the Court improperly exercising criminal contempt power. Id. at 7.

i. Stern 7/28/14 Decl.

On 7/28/14, the Trustee filed a "Supplemental Declaration of David M. Stern in Support of Contempt Sanctions," providing evidence that from 6/24/14 through 7/27/14, the Trustee had incurred an additional $41,195 in legal fees due to Francis's and PSL's contemptuous conduct (Stern 7/28/14 Decl.). BK Docket #638. The Stern 7/28/14 Decl. also indicated that the Trustee estimated he

21

would incur an additional $3,000 in attorneys' fees through the date of the 7/31/14 Hearing.  Id. ¶ 5.

> j.   7/31/14 Hearing

Counsel for Francis, PSL, and the Trustee appeared at the 7/31/14 Hearing.  BK Docket #644 at 3:4-14.  All counsel, including Francis's criminal counsel, who also appeared at the 7/31/14 Hearing, were given an opportunity to be heard.  Id. During the 7/31/14 Hearing, counsel for the Trustee and Counsel for Francis and PSL informed the Court that Francis and PSL had not:

1. Returned the Vehicles to the Trustee;
2. Paid the $5,000 per day sanction from the date of entry of the Contempt Order; or
3. Paid the Trustee's attorneys' fees and costs in the amount of $40,228 for 5/9/14 through 6/23/14.

Id. at 7:6-9:9.

Francis and PSL did not object to the Trustee's request for an additional $41,195 in attorneys' fees and costs incurred from 6/24/14 through 7/27/14.  Id. at 9:10-20.  Francis and PSL also did not object to $3,000 in attorneys' fees and costs that Trustee's counsel estimated they would incur from 7/28/14 through the date of the 7/31/14 Hearing.  Id. at 9:21-11:15.  The Court approved the Trustee's request for $41,195 in attorneys' fees and costs incurred from 6/24/14 through 7/27/14.  Id. at 11:18-20.  The Court also conditionally approved $3,000 in attorneys' fees and costs, conditioned on the Trustee's counsel filing a supplemental declaration demonstrating that the Trustee had actually incurred at least $3,000 in attorney's fees and costs from 7/28/14 through 7/31/14.  Id. at 11:21-12:8.

The Court then inquired of the parties what additional sanctions, if any, the Court should impose.  The Trustee's counsel informed the Court that because of the Supreme Court's decision in Stern v. Marshall, 131 S. Ct. 2594 (2011), he was unsure whether this Court had the constitutional authority to issue an arrest warrant for civil contempt.  BK Docket #644 at 17:16-25.  But, he noted that the Supreme Court, in Executive Benefits Insurance Agency v. Arkison, 134 S. Ct. 2165 (2014), made clear that this Court could submit a report and recommendation to the District Court for review.  BK Docket #644 at 17:24-18:6. The Trustee's counsel requested that the Court issue a report and recommendation for the issuance of arrest warrants to the District Court, subject to the procedures outlined in FRBP 9033.  Id. at 18:17-22.  Francis's and PSL's counsel opposed the Trustee's request that the Court issue a report and recommendation to the District Court.  Id. at 22:7-8.[21]

---

[21]   Francis's and PSL's counsel requested that the Court grant a stay pending appeal.  BK Docket #644 at 22:8-11.  The Court inquired whether he was seeking a stay of the Contempt

The Court next addressed the arguments raised by Francis and PSL in the Incarceration Opposition. Id. at 22:14-40:3. The Court explained that it did not find any of the arguments or authority cited in the Incarceration Opposition to be persuasive. Id. And, to the extent that Francis and PSL were seeking reconsideration of the 7/17/14 Ruling and Contempt Order, the Court found they had not demonstrated that reconsideration was appropriate under Federal Rule of Civil Procedure 59(e), which is incorporated into bankruptcy proceedings by FRBP 9023. BK Docket #644 at 37:14-40:3.

At the conclusion of the 7/31/14 Hearing, the Court stated that it would issue a report and recommendation to the District Court. Id. at 48:18-21.

> k. Stern Second Supplemental Declaration

On 8/1/14, the Trustee filed a "Second Supplemental Declaration of David M. Stern in Support of Contempt Sanctions" (Stern 8/1/14 Decl.). BK Docket #643. Attached to the Stern 8/1/14 Decl. are detailed billing records demonstrating that the Trustee incurred $7,569 in legal fees from 7/28/14 through 7/31/14 as a result of Francis's and PSL's contemptuous conduct. Id. ¶ 6, Ex. J. The Stern 8/1/14 Decl. provided that the Trustee only sought to recover $3,000 of this amount. Id. ¶ 6.

> III.   Recommendation

The rule of law functions effectively within the United States because the residents of this nation, for the most part, comply voluntarily with orders issued by its courts.

Disappointed litigants who do not like the contents of a trial court's court order have the opportunity to appeal, or to move for reconsideration of, that order and, pending the outcome of that appeal or motion, to apply for a stay pending appeal. However, if the effectiveness of an order has not been stayed, either by court order or by operation of law, subject to very limited exceptions not relevant here, that order is effective and must be obeyed. None of the orders referenced in this report has been vacated or reversed on appeal, and no stay of the effectiveness of any of these orders has ever been granted.

As discussed above, Francis and PSL have not complied with the Contempt Order. This Court has imposed monetary sanctions and ordered Francis and PSL to return the Vehicles immediately to the Trustee, without success. In light of the uncertainty regarding this Court's authority to issue an arrest warrant as a

---

Order or of any report and recommendation that the Court might issue. Id. at 40:11-19. Counsel responded that he was seeking a stay of any report and recommendation. Id. at 41:1-7. The Court did not rule on that request noting that it was unclear how to stay something that had not yet been issued. Id. at 41:1-3.

civil coercive sanction, the Court is left with no alternative but to refer this matter to the District Court for further proceedings.

In accordance with 28 U.S.C. § 157(a), the District Court has issued a standing order generally referring all cases under title 11 and all proceedings arising under, arising in or related to cases under title 11 to the bankruptcy judges for the Central District of California. The District Court is authorized by 28 U.S.C. § 157(d) to withdraw, in whole or in part, the reference as to any case or controversy "for cause shown." See FRBP 5011(a), 9033. The Court respectfully submits that the foregoing facts, coupled with the constitutional question regarding the Court's authority to issue arrest warrants as a coercive sanction for civil contempt, constitute sufficient cause within the meaning of 28 U.S.C. § 157(d), for the District Court to withdraw the reference to the extent set forth below. Accordingly, the Court recommends:

1. That the District Court *sua sponte* withdraw, in part, the reference pursuant to 28 U.S.C. § 157(d), for the limited purpose of considering issuing arrest warrants for civil contempt against Francis and PSL's manager, Wilson; and

2. That the District Court issue arrest warrants for Francis and PSL's manager, Wilson, and commit them to the U.S. Marshals Services for the Central District of California, to be detained in custody in this district until Francis and PSL purge the civil contempt by:

    a. Immediately returning the Vehicles to the Trustee;

    b. Paying all outstanding sanctions due to the Clerk of Court per the Contempt Order for failing to return the Vehicles, totaling $65,000 as of the date of the 7/31/14 Hearing ($5,000 per day x 13 days since the day after entry of the Contempt Order), and continuing to accrue sanctions of $5,000 per day until the Vehicles are returned to the Trustee;

    c. Immediately paying the Trustee's attorneys' fees and costs in the amount of $40,228 for the period of 5/9/14 through 6/23/14;

    d. Immediately paying the Trustee's attorneys' fees and costs in the amount of $41,195 for the period of 6/24/14 through 7/27/14;

    e. Immediately paying the Trustee's attorneys' fees and costs in the amount of $3,000 for the period of 7/28/14 through the 7/31/14 Hearing.

## EXHIBIT LIST

| Document | Case and Docket # | Date Filed/Entered | Exhibit |
|---|---|---|---|
| "Stipulation Resolving Emergency *Ex Parte* Application to Enforce, and, to the Extent Necessary, Clarify and Expand Temporary Restraining Order By Specifically Naming Additional Parties" (Stipulation) | Neilson v. Francis, 13-1468-SK, Docket #30 | 5/1/13 | A |
| "Order Approving Stipulation Resolving Emergency *Ex Parte* Application to Enforce, and, to the Extent Necessary, Clarify and Expand Temporary Restraining Order By Specifically Naming Additional Parties" (Consent Order) | Neilson v. Francis, 13-1468-SK, Docket #32 | 5/2/13 | B |
| "Preliminary Injunction" (PI) | Neilson v. Francis, 13-1468-SK, Docket #86 | 10/22/13 | C |
| "Order to Show Cause why Joseph R. Francis and Perfect Science Labs, LLC Should not be Held in Contempt" (Second OSC) | In re GGW Brands, LLC, 13-15130-SK, Docket #585 | 6/10/14 | D |
| "Court's Final Ruling Re: 'Order to Show Cause why Joseph R. Francis and Perfect Science Labs, LLC Should not be Held in Contempt' (Docket #585)" (7/17/14 Ruling) | In re GGW Brands, LLC, 13-15130-SK, Docket #629 | 7/17/14 | E |
| "Order Holding Joseph R. Francis and Perfect Science Labs, LLC in Contempt of Court" (Contempt Order) | In re GGW Brands, LLC, 13-15130-SK, Docket #631 | 7/18/14 | F |

# Exhibit A

1  David M. Stern (Cal. Bar No. 67697)
   Robert J. Pfister (Cal. Bar No. 241370)
2  Matthew C. Heyn (Cal. Bar No. 227474)
   KLEE, TUCHIN, BOGDANOFF & STERN LLP
3  1999 Avenue of the Stars, Thirty-Ninth Floor
   Los Angeles, California 90067
4  Telephone:    310-407-4000
   Facsimile:    310-407-9090
5  Email:        dstern@ktbslaw.com
                 rpfister@ktbslaw.com
6                mheyn@ktbslaw.com

7  *Proposed Attorneys for R. Todd Neilson,*
   *Chapter 11 Trustee*
8

9              **UNITED STATES BANKRUPTCY COURT**

10              **CENTRAL DISTRICT OF CALIFORNIA**

11                  **LOS ANGELES DIVISION**

12  In re                              |  Jointly Administered
                                       |  Case No. 2:13-bk-15130-SK
13  GGW BRANDS, LLC, *et al.*          |
                                       |  Chapter 11
14          Debtors.                   |

15  ─────────────────────────────────

16  R. TODD NEILSON, solely in his capacity as    |  **Adv. No. 2:13-ap-01468-SK**
    chapter 11 trustee,
17
                    Plaintiff,
18
           v.                                     |  **STIPULATION RESOLVING**
19                                                |  **EMERGENCY *EX PARTE* APPLICATION**
    JOSEPH R. FRANCIS, an individual,             |  **TO ENFORCE AND, TO THE EXTENT**
20                                                |  **NECESSARY, CLARIFY AND EXPAND**
                    Defendant.                    |  **TEMPORARY RESTRAINING ORDER**
21                                                |  **BY SPECIFICALLY NAMING**
                                                  |  **ADDITIONAL PARTIES**
22
                                                  |  **Judge:  Hon. Sandra R. Klein**
23                                                |  **Date:   May 1, 2013**
                                                  |  **Time:   3:00 p.m.**
24                                                |  **Place:  255 E. Temple St.**
                                                  |  **       Los Angeles, California 90012**
25                                                |  **Room:   1575**

26

27

28

This stipulation (the "Stipulation") is entered into by and among, on the one hand, R. Todd Neilson, the plaintiff in the above-captioned adversary proceeding (the "Adversary Proceeding") and the duly-appointed, qualified and acting chapter 11 trustee (the "Trustee") of the jointly administered bankruptcy estates of GGW Brands, LLC, GGW Direct, LLC, GGW Events, LLC, and GGW Magazine, LLC (together, the "Debtors"), and, on the other hand: (i) Joseph R. Francis ("Mr. Francis"), the defendant in the Adversary Proceeding; (ii) Abbey Wilson ("Ms. Wilson"); (iii) Perfect Science Labs, LLC ("Perfect Science"); and (iv) Argyle Online, LLC ("Argyle," and collectively with Ms. Wilson and Perfect Science, the "Additional Persons," and together with the Trustee and Mr. Francis, the "Parties"), with reference to the following recitals:

A.     On April 25, 2013, this Court entered its *Temporary Restraining Order and Order to Show Cause Why a Preliminary Injunction Should Not Issue Against Joseph R. Francis* [Adv. Docket. No. 16] (the "TRO").

B.     Prior to April 30, 2013, Mr. Francis acknowledged receipt of the TRO.

C.     On April 30, 2013, Mr. Francis took actions that violated the TRO. The actions involved others acting in concert with him, including the Additional Persons, who gave directions to CA-The Tower Limited Partnership ("Landlord"), the landlord of certain office space at 10940 Wilshire Boulevard, Los Angeles, California occupied by the Debtors (the "Premises").

D.     On April 30, 2013, in response to the actions by Mr. Francis and the Additional Persons, the Trustee filed his *Emergency Ex Parte Application to Enforce and, to the Extent Necessary, Clarify and Expand Temporary Restraining Order by Specifically Naming Additional Parties* [Adv. Docket No. 25] (the "Application"), which has been set for hearing at 3:00 p.m. on May 1, 2013, in the United States Bankruptcy Court for the Central District of California (the "Bankruptcy Court").

E.     The Trustee, Mr. Francis and the Additional Persons wish to resolve the issues set out in the Application, as well as related disputes, on the terms and conditions set out below, subject to approval by the Bankruptcy Court, which has jurisdiction over the Parties, the Application, the Debtors, and this Stipulation.



1    WHEREFORE, the Trustee, Mr. Francis and the Additional Persons agree as follows:

2    1.    The foregoing recitals – set out as paragraphs A through E, inclusive are true and

3    complete.

4    2.    The TRO remains in full force and effect.  Mr. Francis and the Additional Persons

5    jointly and severally acknowledge the TRO and their obligation to abide by it and all its terms.

6    3.    Without limiting the TRO, neither Mr. Francis nor any of the Additional Persons

7    nor any of his, her or their agents, servants, employees, attorneys, or others acting in concert with

8    all or any of the preceding will take any action that will impede or attempt to impede the access of

9    the Debtors, the Trustee, or any of the Trustee's and/or the Debtors' personnel, employees, agents,

10   attorneys or any other persons working with or for them from accessing, utilizing, conducting

11   business and other similar activities at the Premises.  Without limitation, this paragraph prohibits

12   changing locks or combinations, activating or deactivating parking, elevator and suite keys and

13   key cards or entering the Premises save and except with the express permission of the Trustee.

14   4.    Without limiting the TRO, neither Mr. Francis nor any of the Additional Persons

15   nor any of his, her or their agents, servants, employees, attorneys, or others acting in concert with

16   all or any of the preceding will take any action that will interfere with the Trustee's and/or the

17   Debtors' ability to utilize personnel currently performing services for the Trustee or the Debtors,

18   including but not limited to those personnel "leased" from Perfect Science and/or Argyle.  To the

19   extent Mr. Francis or any of the Additional Persons have taken action to impede payment or the

20   personnel, they shall promptly rescind such action.  Without limitation, this paragraph prohibits

21   terminating the employment of any person or individual presently employed by Perfect Science or

22   Argyle providing services to the Trustee and/or Debtors, not processing payroll for such

23   individuals, or communicating with them in any way absent express permission of the Trustee.

24   The preceding is intended to specifically prohibit abusive communications, telephone calls, and

25   any and all other written or oral communications of any kind to the maximum extent permitted

26   under the laws of California and the United States.

27   5.    Neither Mr. Francis nor any of the Additional Persons nor any of his, her or their

28   agents, servants, employees, attorneys, or others acting in concert with all or any of the preceding

2



1    shall: (i) take any action that would (if taken by either Mr. Francis personally or by any of the

2    Additional Persons) violate the TRO or this Stipulation; or (ii) solicit others to take actions that

3    would (if taken by either Mr. Francis personally or by any of the Additional Persons) violate the

4    TRO or this Stipulation.

5        6.        Any entity or person – including, but not limited to, Mr. Francis and any of the

6    Additional Persons excluding Landlord – that acts in violation of the TRO or this Stipulation shall

7    be jointly and severally liable for all damages caused by such conduct, as well as all legal fees and

8    costs incurred by the Trustee or the Debtors in redressing such conduct.  This obligation will be

9    made expressly part of the order approving this Stipulation and is not subject to the provisions of

10   California Civil Code section 1717 or any other similar law or doctrine of like effect.

11       7.        Mr. Francis and the Additional Persons shall promptly communicate to Landlord

12   the terms of this Stipulation and any order approving it.  Landlord may take actions in good faith

13   in reliance upon this Stipulation and any order approving it without liability to Mr. Francis and/or

14   the Additional Persons.  The Trustee may make payments directly to Landlord and Landlord shall

15   not thereby have privity of contract or estate with the Trustee or the Debtors, this payment

16   arrangement being made solely for the convenience of the Trustee and Landlord.  Without limiting

17   the provisions of this paragraph 7, Landlord may also take actions in good faith in reliance upon

18   written instructions delivered to Landlord signed by both the Trustee and an authorized

19   representative of Perfect Science.

20       8.        Notwithstanding anything to the contrary in this Stipulation, Perfect Science's

21   attorney, Brendt C. Butler, shall have access to the Perfect Science's portion of the Premises on

22   one day's notice to either the Trustee or his lawyer.  This access is personal to Mr. Butler and only

23   so long as he is the attorney for Perfect Science.

24       9.        In addition to the preceding, the Trustee agrees to transfer to Mr. Francis the

25   wireless telephone numbers (not included here in the interests of privacy) registered to the Debtors

26   but used personally by Mr. Francis as promptly as practicable via instructions to Verizon Wireless.

27   Following such transfer, as a condition thereof, the Trustee shall have no further responsibility for

28

3



1   any charges relating to such numbers, which responsibility shall be assumed by a person or

2   persons other than the Trustee and/or the Debtors.

3         10.     In addition to the preceding, the Trustee, Mr. Francis and the Additional Persons

4   agree as follows:

5         a.     The Trustee is entitled to immediate possession of the following three

6             automobiles, which are property of the Debtors: (i) a 2007 Cadillac

7             Escalade with a vehicle identification number ("VIN") ending 5603; (ii) a

8             2012 Bentley Flying Spur with a VIN ending 0815; and (iii) a 2008

9             Mercedes Benz SL65 with a VIN ending 0237. The preceding automobiles

10             (each a "Vehicle" and, collectively, the "Vehicles") are currently in Perfect

11             Science's and/or Mr. Francis's possession.

*[handwritten: only y have 2 cars]*

*[handwritten: only (1) Car]*

12         b.     Perfect Science and/or Mr. Francis may continue in possession of the

13             Vehicles provided they maintain the Vehicles in good condition and shall

14             pay the Trustee $750 per month ($250 per month per Vehicle) for the use of *[handwritten: 500]*

15             the Vehicles commencing May 1, 2013. Payment shall be made on or

16             before May 3, 2013, and on the first day of each month in advance

17             hereinafter. If payment is not timely made, then Mr. Francis and/or Perfect

18             Science shall promptly deliver to the Trustee or his designated

19             representative the Vehicles and all keys to the Vehicles. If not promptly

20             delivered, then the Trustee may, on 24 hours' notice, obtain an order from

21             the Bankruptcy Court commanding and permitting the repossession by the

22             Trustee of such Vehicles.

23         c.     Neither Perfect Science nor Mr. Francis nor the Additional Persons shall

24             move for relief from the automatic stay to terminate the Trustee's month-to-

25             month lease on or occupancy of the Premises until on or after July 31, 2013.

26             The Trustee may give 30 days' notice of his intent to vacate the Premises at

27             any time.

28

    d.    Prior to moving for relief from the automatic stay to terminate the Trustee's month-to-month lease on or occupancy of the Premises, Mr. Francis and Perfect Science agree to deliver to the Trustee or his designated representative the Vehicles and all keys to the Vehicles.

    e.    In the event the Trustee gives notice of his intent to vacate the Premises, Perfect Science and Mr. Francis shall, upon the actual vacation of the Premises by the Trustee deliver to the Trustee or his designated representative the Vehicles and all keys to the Vehicles.

The parties set forth below and their counsel are executing this Stipulation on this 1st day of May, 2013, with full knowledge of the solemnity and consequences of this Stipulation and the order to be entered approving it.

R. TODD NEILSON, plaintiff, solely in his capacity as chapter 11 trustee

By:_____
    R. Todd Neilson

JOSEPH R. FRANCIS, defendant

By:_____
    Joseph R. Francis

ABBEY WILSON

By:_____
    Abbey Wilson

5

d. Prior to moving for relief from the automatic stay to terminate the Trustee's month-to-month lease on or occupancy of the Premises, Mr. Francis and Perfect Science agree to deliver to the Trustee or his designated representative the Vehicles and all keys to the Vehicles.

e. In the event the Trustee gives notice of his intent to vacate the Premises, Perfect Science and Mr. Francis shall, upon the actual vacation of the Premises by the Trustee deliver to the Trustee or his designated representative the Vehicles and all keys to the Vehicles.

The parties set forth below and their counsel are executing this Stipulation on this 1st day of May, 2013, with full knowledge of the solemnity and consequences of this Stipulation and the order to be entered approving it.

R. TODD NEILSON, plaintiff, solely in his capacity as chapter 11 trustee

By:_____
R. Todd Neilson

JOSEPH R. FRANCIS, defendant

By:_____
Joseph R. Francis

ABBEY WILSON

By:_____
Abbey Wilson

5

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PERFECT SCIENCE LABS, LLC

By: _____

Name: _____

Title: _____

ARGYLE ONLINE, LLC

By: _____

Name: _____

Title: _____

KLEE, TUCHIN, BOGDANOFF & STERN LLP

By: _____
    David M. Stern, Esq.
*Proposed Attorneys for R. Todd Neilson*

BRENDT C. BUTLER

By: _____
    Brendt C. Butler, Esq.
*Attorney for Joseph R. Francis, Abbey Wilson,
Perfect Science Labs, LLC and Argyle Online, LLC*

6

1

PERFECT SCIENCE LABS, LLC

2

3

By:_____

4

Name:_____

5

Title:_____

6

7

ARGYLE ONLINE, LLC

8

9

By:_____

10

Name:_____

11

Title:_____

12

13

KLEE, TUCHIN, BOGDANOFF & STERN LLP

14

15

By:_____

16

David M. Stern, Esq.
*Proposed Attorneys for R. Todd Neilson*

17

18

BRENDT C. BUTLER

19

20

By:_____

21

Brendt C. Butler, Esq.

22

*Attorney for Joseph R. Francis, Abbey Wilson,*
*Perfect Science Labs, LLC and Argyle Online, LLC*

23

24

25

26

27

28

6

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 1999 Avenue of the Stars, 39th Floor, Los Angeles, California 90067.

A true and correct copy of the foregoing document entitled (specify): **STIPULATION RESOLVING EMERGENCY EX PARTE APPLICATION TO ENFORCE AND, TO THE EXTENT NECESSARY, CLARIFY AND EXPAND TEMPORARY RESTRAINING ORDER BY SPECIFICALLY NAMING ADDITIONAL PARTIES** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On May 1, 2013, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

    Matthew Heyn      mheyn@ktbslaw.com
    United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
    Jonathan M Weiss    jweiss@ktbslaw.com
    Robert Pfister      rpfister@ktbslaw.com

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL:**
On ____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on May 1, 2013, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**VIA PERSONAL DELIVERY**
Hon. Sandra R. Klein
United States Bankruptcy Court
255 E. Temple Street, Suite 1582
Los Angeles, CA 90012

☒ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| May 1, 2013 | Jonathan M. Weiss | /s/ Jonathan M. Weiss |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

144328.1   This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**

**TO BE SERVED VIA E-MAIL**

Brendt C. Butler, Esq., counsel to Joseph R. Francis
b.butler@oms-llc.com

Ronald Tym, Esq., counsel to Perfect Science Labs, LLC and Argyle Online, LLC
Rtym@tymfirm.com

Joseph R. Francis
joe@braincandy.com

Abbey Wilson
a@abbeylauren.com

Tim McDonnell, counsel to Equity Office Properties
tmcdonnell@allenmatkins.com;

Mike Greger, counsel to Equity Office Properties
mgreger@allenmatkins.com

144328.1    This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                 **F 9013-3.1.PROOF.SERVICE**

Exhibit B

1  David M. Stern (Cal. Bar No. 67697)
   Robert J. Pfister (Cal. Bar No. 241370)
2  Matthew C. Heyn (Cal. Bar No. 227474)
   KLEE, TUCHIN, BOGDANOFF & STERN LLP
3  1999 Avenue of the Stars, Thirty-Ninth Floor
   Los Angeles, California 90067
4  Telephone:    310-407-4000
   Facsimile:    310-407-9090
5  Email:        dstern@ktbslaw.com
                 rpfister@ktbslaw.com
6                mheyn@ktbslaw.com

7  *Proposed Attorneys for R. Todd Neilson,*
   *Chapter 11 Trustee*
8

```
FILED & ENTERED

        MAY 02 2013

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY carranza  DEPUTY CLERK
```

9              **UNITED STATES BANKRUPTCY COURT**

10             **CENTRAL DISTRICT OF CALIFORNIA**

11                 **LOS ANGELES DIVISION**

12  In re                              | Jointly Administered
                                       | Case No. 2:13-bk-15130-SK
13  GGW BRANDS, LLC, *et al.*
                                       |
14         Debtors.                    | Chapter 11

15  ─────────────────────────

16  R. TODD NEILSON, solely in his capacity as     **Adv. No. 2:13-ap-01468-SK**
    chapter 11 trustee,
17
             Plaintiff,
18                                                 **ORDER APPROVING STIPULATION**
       v.                                          **RESOLVING EMERGENCY *EX PARTE***
19                                                 **APPLICATION TO ENFORCE AND, TO**
    JOSEPH R. FRANCIS, an individual,              **THE EXTENT NECESSARY, CLARIFY**
20                                                 **AND EXPAND TEMPORARY**
             Defendant.                            **RESTRAINING ORDER BY**
21                                                 **SPECIFICALLY NAMING ADDITIONAL**
                                                   **PARTIES**
22

23                                                 **Judge:  Hon. Sandra R. Klein**
                                                   **Date:   May 1, 2013**
24                                                 **Time:   3:00 p.m.**
                                                   **Place:  255 E. Temple St.**
25                                                 **        Los Angeles, California 90012**
                                                   **Room:   1575**
26

27

28

144341.2

1

2      The Court having reviewed the stipulation (the "Stipulation") of, on the one hand, R. Todd

3      Neilson, the plaintiff in the above-captioned adversary proceeding (the "Adversary Proceeding")

4      and the duly-appointed, qualified and acting chapter 11 trustee (the "Trustee") of the jointly

5      administered bankruptcy estates of GGW Brands, LLC, GGW Direct, LLC, GGW Events, LLC,

6      and GGW Magazine, LLC (together, the "Debtors"), and, on the other hand: (i) Joseph R. Francis

7      ("Mr. Francis"), the defendant in the Adversary Proceeding; (ii) Abbey Wilson ("Ms. Wilson");

8      (iii) Perfect Science Labs, LLC ("Perfect Science"); and (iv) Argyle Online, LLC ("Argyle," and

9      collectively with Ms. Wilson and Perfect Science, the "Additional Persons," and together with the

10     Trustee and Mr. Francis, the "Parties"), and having determined that good cause exists to approve

11     the Stipulation,

12          IT IS HEREBY ORDERED:

13          1.      The Stipulation is approved in its entirety.  The failure to state any term of the

14     Stipulation below shall not constitute any non-approval of such term.

15          2.      The *Temporary Restraining Order and Order to Show Cause Why a Preliminary*

16     *Injunction Should Not Issue Against Joseph R. Francis* [Adv. Docket. No. 16] (the "TRO")

17     remains in full effect as set forth therein and in subsequent pleadings extending its effectiveness.

18          3.      Mr. Francis and the Additional Persons have acknowledged the TRO and their

19     obligation to abide by it and all its terms.  Additionally, CA-The Tower Limited Partnership (the

20     "Landlord"), the landlord of certain office space at 10940 Wilshire Boulevard, Los Angeles,

21     California occupied by the Debtors (the "Premises"), has been made aware of the TRO and the

22     Stipulation.

23          4.      Without limiting the TRO, neither Mr. Francis nor any of the Additional Persons

24     nor any of his, her or their agents, servants, employees, attorneys, or others acting in concert with

25     all or any of the preceding will take any action that will impede or attempt to impede the access of

26     the Debtors, the Trustee, or any of the Trustee's and/or the Debtors' personnel, employees, agents,

27     attorneys or any other persons working with or for them from accessing, utilizing, conducting

28     business and other similar activities at the Premises.  Without limitation, this paragraph prohibits

144341.2                                                1

1  changing locks or combinations, activating or deactivating parking, elevator and suite keys and

2  key cards or entering the Premises save and except with the express permission of the Trustee.

3      5.      Without limiting the TRO, neither Mr. Francis nor any of the Additional Persons

4  nor any of his, her or their agents, servants, employees, attorneys, or others acting in concert with

5  all or any of the preceding will take any action that will interfere with the Trustee's and/or the

6  Debtors' ability to utilize personnel currently performing services for the Trustee or the Debtors,

7  including but not limited to those personnel "leased" from Perfect Science and/or Argyle.  To the

8  extent Mr. Francis or any of the Additional Persons have taken action to impede payment or the

9  personnel, they shall promptly rescind such action.  Without limitation, this paragraph prohibits

10  terminating the employment of any person or individual presently employed by Perfect Science or

11  Argyle providing services to the Trustee and/or Debtors, not processing payroll for such

12  individuals, or communicating with them in any way absent express permission of the Trustee.

13  The preceding is intended to specifically prohibit abusive communications, telephone calls, and

14  any and all other written or oral communications of any kind to the maximum extent permitted

15  under the laws of California and the United States.

16      6.      Neither Mr. Francis nor any of the Additional Persons nor any of his, her or their

17  agents, servants, employees, attorneys, or others acting in concert with all or any of the preceding

18  shall: (i) take any action that would (if taken by either Mr. Francis personally or by any of the

19  Additional Persons) violate the TRO or this Stipulation; or (ii) solicit others to take actions that

20  would (if taken by either Mr. Francis personally or by any of the Additional Persons) violate the

21  TRO or this Stipulation.

22      7.      Any entity or person – including, but not limited to, Mr. Francis and any of the

23  Additional Persons excluding Landlord – that acts in violation of the TRO or this Stipulation shall

24  be jointly and severally liable for all damages caused by such conduct, as well as all legal fees and

25  costs incurred by the Trustee or the Debtors in redressing such conduct.  This obligation is made

26  expressly part of this order and is not subject to the provisions of California Civil Code section

27  1717 or any other similar law or doctrine of like effect.

28

8.     Landlord may take actions in good faith in reliance upon the Stipulation and this order approving it without liability to Mr. Francis and/or the Additional Persons. The Trustee may make payments directly to Landlord and Landlord shall not thereby have privity of contract or estate with the Trustee or the Debtors, this payment arrangement being made solely for the convenience of the Trustee and Landlord. Without limiting the foregoing, Landlord may also take actions in good faith in reliance upon written instructions delivered to Landlord signed by both the Trustee and an authorized representative of Perfect Science.

9.     Notwithstanding anything to the contrary in this order or the Stipulation, Perfect Science's attorney, Brendt C. Butler, shall have access to the Perfect Science's portion of the Premises on one day's notice to either the Trustee or his lawyer. This access is personal to Mr. Butler and only so long as he is the attorney for Perfect Science.

10.    In addition to the preceding, the Trustee shall transfer to Mr. Francis the wireless telephone numbers (not included here in the interests of privacy) registered to the Debtors but used personally by Mr. Francis as promptly as practicable via instructions to Verizon Wireless. Following such transfer, as a condition thereof, the Trustee shall have no further responsibility for any charges relating to such numbers, which responsibility shall be assumed by a person or persons other than the Trustee and/or the Debtors.

11.    The Trustee is entitled to immediate possession of the following two automobiles, which are property of the Debtors: (i) a 2007 Cadillac Escalade with a vehicle identification number ("VIN") ending 5603; and (ii) a 2012 Bentley Flying Spur with a VIN ending 0815. The preceding automobiles (each a "Vehicle" and, collectively, the "Vehicles") are currently in Perfect Science's and/or Mr. Francis's possession.

12.    Perfect Science and/or Mr. Francis may continue in possession of the Vehicles provided they maintain the Vehicles in good condition and shall pay the Trustee $500 per month ($250 per month per Vehicle) for the use of the Vehicles commencing May 1, 2013. Payment shall be made on or before May 3, 2013, and on the first day of each month in advance hereinafter. If payment is not timely made, then Mr. Francis and/or Perfect Science shall promptly deliver to the Trustee or his designated representative the Vehicles and all keys to the Vehicles. If not

144341.2                               3

1  promptly delivered, then the Trustee may, on 24 hours' notice, seek an order from this Court

2  commanding and permitting the repossession by the Trustee of such Vehicles.

3       13.     Neither Perfect Science nor Mr. Francis nor the Additional Persons shall move for

4  relief from the automatic stay to terminate the Trustee's month-to-month lease on or occupancy of

5  the Premises until on or after July 31, 2013.  The Trustee may give 30 days' notice of his intent to

6  vacate the Premises at any time.

7       14.     Prior to moving for relief from the automatic stay to terminate the Trustee's month-

8  to-month lease on or occupancy of the Premises, Mr. Francis and Perfect Science must deliver to

9  the Trustee or his designated representative the Vehicles and all keys to the Vehicles.

10       15.     In the event the Trustee gives notice of his intent to vacate the Premises, Perfect

11  Science and Mr. Francis shall, upon the actual vacation of the Premises by the Trustee deliver to

12  the Trustee or his designated representative the Vehicles and all keys to the Vehicles.

13       16.     This Court retains jurisdiction to interpret and enforce this order and the TRO, and

14  retains jurisdiction over each of the Parties to ensure compliance herewith.

15                      ###

16

17  APPROVED AS TO FORM:

18

19    /s/ Brendt C. Butler
Brendt C. Butler, *counsel for*

20  *Joseph R. Francis, Abbey Wilson,*
*Perfect Science Labs, LLC, and*

21  *Argyle Online, LLC*

22

23  Date: May 2, 2013

24  David M. Stern, *proposed counsel*
*for R. Todd Neilson, chapter 11*

25  *trustee\*

26

27

28

Sandra R. Klein
United States Bankruptcy Judge

144341.2                        4

# NOTICE OF ENTERED ORDER AND SERVICE LIST

Notice is given by the court that a judgment or order entitled **ORDER APPROVING STIPULATION RESOLVING EMERGENCY EX PARTE APPLICATION TO ENFORCE AND, TO THE EXTENT NECESSARY, CLARIFY AND EXPAND TEMPORARY RESTRAINING ORDER BY SPECIFICALLY NAMING ADDITIONAL PARTIES**
was entered on the date indicated as "Entered" on the first page of this judgment or order and will be served in the manner stated below:

**1.   SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)** – Pursuant to controlling General Orders and LBRs, the foregoing document was served on the following persons by the court via NEF and hyperlink to the judgment or order. As of May 1, 2013 the following persons are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email addresses stated below.

Matthew Heyn    mheyn@ktbslaw.com
  Robert J Pfister    rpfister@ktbslaw.com
  United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
  Jonathan M Weiss    jweiss@ktbslaw.com

☐   Service information continued on attached page

**2.   SERVED BY THE COURT VIA UNITED STATES MAIL:** A copy of this notice and a true copy of this judgment or order was sent by United States mail, first class, postage prepaid, to the following persons and/or entities at the addresses indicated below:

☐   Service information continued on attached page

**3.   TO BE SERVED BY THE LODGING PARTY**: Within 72 hours after receipt of a copy of this judgment or order which bears an "Entered" stamp, the party lodging the judgment or order will serve a complete copy bearing an "Entered" stamp by United States mail, overnight mail, facsimile transmission or email and file a proof of service of the entered order on the following persons and/or entities at the addresses, facsimile transmission numbers, and/or email addresses stated below:

VIA EMAIL:                  Ronald Tym                Tim McDonnell
Joseph R. Francis           rtym@tymfirm.com          tmcdonnell@allenmatkins.com
joe@braincandy.com
                            Abbey Wilson              Mike Greger
Brendt C. Butler            a@abbeylauren.com         mgreger@allenmatkins.com
b.butler@oms-llc.com

☐   Service information continued on attached page

Exhibit C

1  David M. Stern (Cal. Bar No. 67697)
   Robert J. Pfister (Cal. Bar No. 241370)
2  Matthew C. Heyn (Cal. Bar No. 227474)
   KLEE, TUCHIN, BOGDANOFF & STERN LLP
3  1999 Avenue of the Stars, Thirty-Ninth Floor
   Los Angeles, California 90067
4  Telephone:    310-407-4000
   Facsimile:    310-407-9090
5  Email:        dstern@ktbslaw.com
                 mheyn@ktbslaw.com
6

7  *Attorneys for GGW Marketing and R. Todd
   Neilson, Chapter 11 Trustee*

8

**FILED & ENTERED**

**OCT 22 2013**

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY vandenst DEPUTY CLERK

9              **UNITED STATES BANKRUPTCY COURT**

10             **CENTRAL DISTRICT OF CALIFORNIA**

11                  **LOS ANGELES DIVISION**

12  In re                                Case No. 2:13-bk-15130-SK
                                         Jointly Administered
13  GGW BRANDS, LLC, et al.
                                         Chapter 11
14            Debtor.

15  R. TODD NEILSON, solely in his capacity as   **Adv. No. 2:13-ap-01468-SK**
    chapter 11 trustee,
16
                                         **PRELIMINARY INJUNCTION**
17            Plaintiff,

18       v.

19  JOSEPH R. FRANCIS, an individual,           Hearing:

20            Defendant.               Date:   October 22, 2013
                                       Time:   9:00 a.m.
21                                     Judge:  Hon. Sandra Klein

22

23

24

25

26

27

28

147199.1

1    On April 23, 2013, R. Todd Neilson, chapter 11 trustee (the "Trustee") of the bankruptcy

2    estates of GGW Brands, LLC, GGW Direct, LLC, GGW Events, LLC, and GGW Magazine, LLC

3    (collectively, with GGW Marketing, LLC, the "Debtors" or "GGW"), filed an *Emergency Motion*

4    *for (1) Temporary Restraining Order, and (2) Order to Show Cause Why a Preliminary Injunction*

5    *Should Not Issue Against Joseph R. Francis* (the "Motion").  The Trustee concurrently filed under

6    seal a memorandum of points and authorities and several declarations in support of the Motion.

7    On April 24, 2013, the Court held a hearing on the Motion and considered the Motion, the

8    memorandum of points and authorities, declarations in support of the Motion, and all other

9    pleadings filed in the Debtors' cases.  Based on this review and consideration, the Court issued a

10   Temporary Restraining Order against Joseph R. Francis (the "TRO") and issued an order to show

11   cause (the "OSC") why a preliminary injunction should not issue against Mr. Francis.  *See*

12   *Temporary Restraining Order and Order to Show Cause Why a Preliminary Injunction Should*

13   *Not Issue Against Joseph R. Francis* [Docket No. 16].  Subsequently, on May 2, 2013, following

14   stipulation of the parties [Docket No. 30] this Court entered the Order *Approving Stipulation*

15   *Resolving Emergency Ex Parte Application To Enforce And, To The Extent Necessary, Clarify*

16   *And Expand Temporary Restraining Order By Specifically Naming Additional Parties* [Docket

17   No. 32] (the "Consent Order"), which clarifies that Abbey Wilson, Perfect Science Labs, LLC,

18   and Argyle Online, LLC (together, the "Additional Persons") must abide by the TRO and sets

19   forth additional requirements for Joseph Francis, the Additional Persons and those acting in

20   concert with them.

21   After several continuances, the Court set a hearing on the OSC for October 22, 2013, and

22   set a briefing schedule regarding the OSC.  *See* Docket No. 58.  Francis did not timely file any

23   opposition to the OSC, and the Court, therefore, ordered that "the Court deems Francis's failure to

24   file a timely opposition to the [OSC] to be consent to the granting of the preliminary injunctions."

25   *Order Re: Untimely Opposition to Issuance of Preliminary Injunction* [Docket No. 82].

26   NOW, THEREFORE, based on its review and consideration of the Motion, the

27   memorandum of points and authorities, declarations in support of the Motion, all other pleadings

28

1    filed in this adversary proceeding and the Debtors' cases, the Court FINDS and DETERMINES

2    that:

3        A.    A preliminary injunction is necessary to maintain the status quo. This Order is

4    issued to protect the Debtors and their employees from Joseph R. Francis threatening the Debtors'

5    employees or otherwise interrupting, interfering with, or exerting influence or control over the

6    Debtors' operations or its employees.

7        B.    Good cause exists to grant a preliminary injunction. Permitting Joseph R. Francis

8    to continue to interfere with the Debtors' operations or employees would have an immediate and

9    irreparable impact on the Debtors and their employees. Threatening the employees irreparably

10   harms the Debtors' reorganization efforts, imposes additional costs and burdens on the Debtors,

11   and jeopardizes the employees' physical safety and well-being. The resulting harm to the Debtors

12   would be immediate, substantial, and irreparable because several of its important employees may

13   choose to resign from the Debtors if such activity continues.

14       C.    The Trustee's service of the Motion on Mr. Francis, including by personally

15   delivering a copy to his residence and advising his counsel who has represented him in other

16   matters, was reasonable under the circumstances and is adequate.

17       **ACCORDINGLY, IT IS HEREBY ORDERED:**

18       1.    Until the earlier of (i) the conclusion of the above-captioned adversary proceeding

19   or (ii) the modification or dissolution of this Order, Defendant Joseph R. Francis and his agents,

20   servants, employees, attorneys, and those persons in concert or participation with him, are

21   HEREBY ENJOINED AND RESTRAINED from:

22       •    Communicating with GGW's employees. Enjoined communications shall include,

23            without limitation, calling, e-mailing, texting, faxing, or otherwise contacting,

24            engaging with, or attempting to exercise influence or control over any employees

25            rendering services to GGW.

26       •    Coming within 100 feet of GGW's offices (located at 10940 Wilshire Boulevard,

27            Los Angeles, California 90024 (the "Premises")) or its employees.

28

147199.1                                        2

1    • Interfering with the Trustee's control of GGW's assets (including, without

2    limitation, any servers or computers that have GGW electronically stored

3    information).

4    • Threatening or harassing employees of GGW or Argyle Online, LLC.

5    2.    Without limiting the foregoing, Mr. Francis, the Additional Persons and any of his,

6    her, and their agents, servants, employees, attorneys, and others acting in concert with all or any of

7    them are hereby ENJOINED AND RESTRAINED from any action that will impede or attempt to

8    impede the access of the Debtors, the Trustee, or any of the Trustee's and/or the Debtors'

9    personnel, employees, agents, attorneys or any other persons working with or for them from

10    accessing, utilizing, conducting business and other similar activities at the Premises.  Without

11    limitation, this paragraph prohibits changing locks or combinations, activating or deactivating

12    parking, elevator and suite keys and key cards or entering the Premises save and except with the

13    express permission of the Trustee.

14    3.    Without limiting the foregoing, Mr. Francis, the Additional Persons and any of his,

15    her, and their agents, servants, employees, attorneys, and others acting in concert with all or any of

16    them are hereby ENJOINED AND RESTRAINED from taking any action that will interfere with

17    the Trustee's and/or the Debtors' ability to utilize personnel currently performing services for the

18    Trustee or the Debtors.  Without limitation, this paragraph prohibits communicating with any of

19    the Debtors' employees in any way absent express permission of the Trustee.  The preceding is

20    intended to specifically prohibit abusive communications, telephone calls, and any and all other

21    written or oral communications of any kind to the maximum extent permitted under the laws of

22    California and the United States.

23    4.    Without limiting the foregoing, Mr. Francis, the Additional Persons and any of his,

24    her, and their agents, servants, employees, attorneys, and others acting in concert with all or any of

25    them are hereby ENJOINED AND RESTRAINED from: (i) taking any action that would (if taken

26    by either Mr. Francis personally or by any of the Additional Persons) violate this Preliminary

27    Injunction; or (ii) solicit others to take actions that would (if taken by either Mr. Francis personally

28    or by any of the Additional Persons) violate this Preliminary Injunction.

147199.1    3

5.      Without limiting the foregoing, any entity or person – including, but not limited to, Mr. Francis and any of the Additional Persons – that acts in violation of this Preliminary Injunction shall be jointly and severally liable for all damages caused by such conduct, as well as all legal fees and costs incurred by the Trustee or the Debtors in redressing such conduct.  This obligation is made expressly part of this order and is not subject to the provisions of California Civil Code section 1717 or any other similar law or doctrine of like effect.

6.      Pursuant to Rule 7065 of the Federal Rules of Bankruptcy Procedure and Rule 65(c) of the Federal Rules of Civil Procedure, no bond is required for this preliminary injunction to be effective.

7.      The Trustee shall serve this Order on Mr. Francis (through his attorney) and the Additional Persons immediately and file a proof of service.  This Order is without prejudice to the right of Mr. Francis, the Additional Persons, or any other interested party to seek an order dissolving or modifying this preliminary injunction.  This Order is also without prejudice to the Trustee seeking further injunctive relief.

8.      Each and every provision of the Consent Order is made part of this Preliminary Injunction as if set forth herein.

9.      This Court retains jurisdiction to interpret and enforce this Preliminary Injunction, and retains jurisdiction over each of the Parties to ensure compliance herewith.

10.     This Order is entered at the date and time in the electronic header.

###

Date: October 22, 2013

Sandra R. Klein
United States Bankruptcy Judge

147199.1

4

# NOTICE OF ENTERED ORDER AND SERVICE LIST

Notice is given by the court that a judgment or order entitled (*specify*):  PRELIMINARY INJUNCTION  was entered on the date indicated as Entered on the first page of this judgment or order and will be served in the manner stated below:

**1.  SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)** - Pursuant to controlling General Orders and LBRs, the foregoing document was served on the following persons by the court via NEF and hyperlink to the judgment or order.  As of (*date*)   10/22/13, the following persons are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email addresses stated below:

Brendt C Butler    brendt.butler@gmail.com
Richard K Diamond    rdiamond@dgdk.com, DanningGill@gmail.com
Matthew Heyn    mheyn@ktbslaw.com
Michael D Kolodzi    mdk@mdklawfirm.com
Robert J Pfister    rpfister@ktbslaw.com
Ronald N Richards    ron@ronaldrichards.com, nick@ronaldrichards.com
Steven J Schwartz    sschwartz@dgdk.com, DanningGill@gmail.com
United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
Jonathan M Weiss    jweiss@ktbslaw.com

☐ Service information continued on attached page.

**2.  SERVED BY THE COURT VIA UNITED STATES MAIL**:  A copy of this notice and a true copy of this judgment or order was sent by United States mail, first class, postage prepaid, to the following persons and/or entities at the addresses indicated below:

☐ Service information continued on attached page.

**3.  TO BE SERVED BY THE LODGING PARTY:**  Within 72 hours after receipt of a copy of this judgment or order which bears an Entered stamp, the party lodging the judgment or order will serve a complete copy bearing an Entered stamp by United States mail, overnight mail, facsimile transmission or email and file a proof of service of the entered order on the following persons and/or entities at the addresses, facsimile transmission numbers, and/or email addresses stated below:

Joseph Francis

Ronald Tym

Michael Kolodzi

☐ Service information continued on attached page.

147199.1

Exhibit D

1  David M. Stern (Cal. Bar No. 67697)
   Michael L. Tuchin (Cal. Bar No. 2150375)
2  Matthew C. Heyn (Cal. Bar No. 227474)
   Jonathan M. Weiss (Cal. Bar No. 281217)
3  KLEE, TUCHIN, BOGDANOFF & STERN LLP
   1999 Avenue of the Stars, Thirty-Ninth Floor
4  Los Angeles, California 90067
   Telephone:    310-407-4000
5  Facsimile:    310-407-9090
   Email:        dstern@ktbslaw.com
6                mtuchin@ktbslaw.com
                 mheyn@ktbslaw.com
7                jweiss@ktbslaw.com

8  *Attorneys for R. Todd Neilson, chapter 11 trustee*
   *and GGW Marketing, LLC*

9

FILED & ENTERED

JUN 10 2014

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY carranza DEPUTY CLERK

10             **UNITED STATES BANKRUPTCY COURT**

11             **CENTRAL DISTRICT OF CALIFORNIA**

12                **LOS ANGELES DIVISION**

13  *In re*

14  GGW BRANDS, LLC,                    Case No. 2:13-bk-15130-SK
    GGW DIRECT, LLC,
15  GGW EVENTS, LLC,                    Jointly Administered
    GGW MAGAZINE, LLC and
16  GGW MARKETING, LLC,                 Chapter 11

17             Debtors.                 **ORDER TO SHOW CAUSE WHY**
                                        **JOSEPH R. FRANCIS AND PERFECT**
18                                      **SCIENCE LABS, LLC SHOULD NOT BE**
    This pleading affects:             **HELD IN CONTEMPT**
19  All Debtors             ■
    GGW Brands, LLC         ☐          Hearing:
20  GGW Direct, LLC         ☐          Date:   July 10, 2014
    GGW Events, LLC         ☐          Time:   10:00 a.m.
21  GGW Magazine, LLC       ☐          Judge:  Hon. Sandra R. Klein
    GGW Marketing, LLC      ☐          Place:  U.S. Bankruptcy Court
22                                             255 E. Temple St., Ctrm. 1575
                                               Los Angeles, CA 90012
23

24

25

26

27

28

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

1    On June 2, 2014, GGW Marketing, LLC ("GGW Marketing") and R. Todd Neilson (the

2  "Trustee"), in his capacity as chapter 11 trustee of the bankruptcy estates of GGW Brands, LLC,

3  GGW Direct, LLC, GGW Events, LLC, and GGW Magazine, LLC (collectively with GGW

4  Marketing, the "Debtors"), filed their *Notice of Motion and Motion For Issuance of Order to Show*

5  *Cause Why Joseph R. Francis and Perfect Science Labs, LLC Should Not Be Held In Contempt;*

6  *Declarations of R. Todd Neilson, Matthew C. Heyn, Adam Levin and Tristen Lazareff in Support*

7  *Thereof* [Dkt. No. 570] (the "OSC Motion").

8    The OSC Motion alleges that Joseph R. Francis and Perfect Science Labs, LLC have

9  violated and continue to violate the following orders entered by this Court in the related adversary

10  proceeding styled *Neilson v. Francis*, Adv. Proc. No. 2:13-ap-01468-SK:  (i) the *Order Approving*

11  *Stipulation Resolving Emergency Ex Parte Application to Enforce and, to the Extent Necessary,*

12  *Clarify and Expand Temporary Restraining Order Specifically Naming Additional Parties* [Adv.

13  Dkt. No. 32] (the "Consent Order"); and (ii) the *Preliminary Injunction* [Adv. Dkt. No. 86] (the

14  "Preliminary Injunction").

15    Pursuant to Local Bankruptcy Rule 9020-1(c)(2)(B), Mr. Francis and Perfect Science Labs,

16  LLC are hereby notified that the possible sanctions sought by the OSC Motion include, without

17  limitation, (i) a penalty of $5,000 per day until the two Vehicles (as defined below) are delivered

18  to the Trustee; and (ii) payment of the Trustee's attorneys' fees and costs arising from Mr.

19  Francis's and Perfect Science Labs, LLC's contumacious conduct.

20    The Court, having examined the OSC Motion and the declarations and evidence attached

21  thereto, and no opposition having been filed by Mr. Francis and/or Perfect Science Labs, LLC, has

22  found that (i) cause exists to believe that Joseph R. Francis and Perfect Science Labs, LLC have

23  violated and continue to violate the Consent Order and the Preliminary Injunction; (ii) the Court

24  has jurisdiction over the parties and the subject matter of the OSC Motion; and (iii) due and proper

25  notice of the OSC Motion has been provided.  Therefore,

26    IT HEREBY IS ORDERED:

27    A.    Joseph R. Francis and Perfect Science Labs, LLC (through its authorized and

28  knowledgeable designee) shall appear before this Court at a hearing on July 10, 2014, at 10:00

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

1

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

1   a.m., (the "Hearing") at 255 E. Temple Street, Courtroom 1575, Los Angeles, California to show

2   cause, if any, why they should not be held in contempt of Court for the alleged violations of the

3   Consent Order and Preliminary Injunction.  Pursuant to Local Bankruptcy Rule 9013-1(i), all

4   parties are notified that the Court may permit any party to submit witness testimony at the

5   Hearing.

6       B.      On or before June 19, 2014 at 12:00 noon, Mr. Francis and Perfect Science Labs,

7   LLC shall file and serve a written explanation, if there is an explanation, why they should not be

8   held in contempt of Court for the alleged violations of the Consent Order and Preliminary

9   Injunction.  During the Hearing, the Court may treat as true any uncontroverted facts established

10  by declaration and limit testimony to controverted facts only.

11      C.      Mr. Francis's and Perfect Science Labs, LLC's written explanation shall address

12  the allegation in the OSC Motion that Mr. Francis and Perfect Science Labs, LLC are in

13  continuing violation of Paragraph 15 of the Consent Order and Paragraph 8 of the Preliminary

14  Injunction due to their failure to return to the Trustee two vehicles (together, the "Vehicles"): (i) a

15  2007 Cadillac Escalade with a vehicle identification number ("VIN") ending 5603, and (ii) a 2012

16  Bentley Flying Spur with a VIN ending 0815.[1]

17      D.      Mr. Francis's written explanation also shall address the allegation in the OSC

18  Motion that Mr. Francis violated the Preliminary Injunction by repeatedly entering the Debtors'

19  former office located at 10940 Wilshire Boulevard, Los Angeles, California 90024 (the

20  "Premises") on May 9, 2014 and May 16, 2014, and, while at the Premises, assaulted, battered,

21  and harassed several individuals.

22      E.      If Mr. Francis and/or Perfect Science Labs, LLC files such written explanation, the

23  Trustee may file an optional response on or before June 26, 2014 at 12:00 noon.  The Trustee may

24

25  [1]  Paragraph 15 of the Consent Order provides:  "In the event the Trustee gives notice of his
    intent to vacate the Premises, Perfect Science and Mr. Francis shall, upon the actual vacation
26  of the Premises by the Trustee deliver to the Trustee or his designated representative the
    Vehicles and all keys to the Vehicles."  Paragraph 8 of the Preliminary Injunction provides:
27  "Each and every provision of the Consent Order is made part of this Preliminary Injunction as
    if set forth herein."

28

1  submit supplemental evidence of the damages caused by Mr. Francis's and Perfect Science Labs,

2  LLC's alleged violation of the Consent Order and Preliminary Injunction in his optional response

3  or at the Hearing.

4       F.     The Trustee shall serve copies of this Order on Mr. Francis and Perfect Science

5  Labs, LLC, in the manner specified in Local Bankruptcy Rule 9020-1(e), **no later than June 11,**

6  **2014 at 5:00 p.m.**

7       **G.  No party shall file any additional briefs or evidence, other than those briefs and**

8  **evidence specifically mentioned in this order.**

9                                # # #

10

11

12

13

14

15

16

17

18

19

20

21

22

23  Date: June 10, 2014

24                                   Sandra R. Klein
United States Bankruptcy Judge

25

26

27

28

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

Exhibit E

1
2
3
4
5

**FILED**

JUL 1 7 2014

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY:                    Deputy Clerk

6

7      ## UNITED STATES BANKRUPTCY COURT

8      ## CENTRAL DISTRICT OF CALIFORNIA

9      ## LOS ANGELES DIVISION

10

11   | In re: | Case No.: 2:13-bk-15130-SK |

12

13   GGW Brands, LLC
     GGW Marketing, LLC

     CHAPTER 11

14   **COURT'S FINAL RULING RE: "ORDER TO**
     **SHOW CAUSE WHY JOSEPH R. FRANCIS**
15   **AND PERFECT SCIENCE LABS, LLC**
     **SHOULD NOT BE HELD IN CONTEMPT"**
16                          Debtor(s).   **(DOCKET #585)**

17   Date:        7/10/14
     Time:        10:00 a.m.
18   Courtroom:   1575

19

20   On 7/10/14, the Court held a hearing on the "Order to Show Cause Why Joseph R.

21   Francis and Perfect Science Labs, LLC Should not be Held in Contempt." The Court's

22   final ruling is attached hereto.

23
24
25
26
27
28

**ORIGINAL**

Before the Court is an "Order to Show Cause Why Joseph R. Francis and Perfect
Science Labs, LLC Should not be Held in Contempt" (Second OSC). BK Docket #585.[1]
On 6/19/14, Joseph R. Francis (Francis) and Perfect Science Labs, LLC (PSL) filed a
"Response to Order to Show Cause . . ." (Response). BK Docket #601. On 6/26/14,
GGW Marketing, LLC and R. Todd Neilson, the Chapter 11 Trustee for GGW Brands,
LLC, GGW Direct, LLC, GGW Events, LLC, and GGW Magazine, LLC, filed a "Reply in
Support of Motion to Hold Joseph R. Francis and Perfect Science Labs, LLC in
Contempt" (Reply). BK Docket #605. On 7/10/14, the Court held a hearing on the
Second OSC (Hearing).

This decision constitutes the Court's findings of fact and conclusions of law under
Federal Rules of Bankruptcy Procedure (FRBP) 9014 and 7052.

   I.  Facts

      a.  Bankruptcy Cases

GGW Brands, LLC, GGW Direct, LLC, GGW Events, LLC, and GGW Magazine, LLC
(collectively, the Original GGW Debtors) filed chapter 11 cases on 2/27/13. BK Docket
#1.[2] On 3/21/13, Wynn Las Vegas, LLC d/b/a Wynn Las Vegas filed a motion to
appoint a chapter 11 trustee (Trustee Motion). BK Docket #28. The Court granted the
Trustee Motion and on 4/12/13, appointed R. Todd Neilson as the chapter 11 trustee
(Trustee) in the Original GGW Debtors' cases. BK Docket #82.

On 5/9/13, the Trustee filed a motion to: 1) revoke the cancellation of GGW Marketing,
LLC; 2) file a bankruptcy petition on behalf of GGW Marketing, LLC; and 3) file an
adversary proceeding to recover certain trademarks vital to the Girls Gone Wild
business, which the Trustee alleged had been fraudulently transferred by GGW
Marketing, LLC to various entities controlled by Francis (Revocation Motion). BK
Docket #120. On 5/20/13, the Court entered an order granting the Revocation Motion
(Revocation Order). BK Docket #153.[3] On 5/22/13, GGW Marketing, LLC filed a
chapter 11 petition. In re GGW Marketing, LLC, 13-23452-SK.[4] The Debtors' cases are
being jointly administered. BK Docket #172.

---

[1]  All references to "BK Docket" are to the docket in In re GGW Brands, LLC, 13-15130-SK and all
references to "AP Docket" are to the docket in Neilson v. Francis, 13-01468-SK.

[2]  The Original GGW Debtors filed separate bankruptcy petitions: 1) In re GGW Brands, LLC, 13-bk-
15130-SK; 2) In re GGW Direct, LLC, 13-bk-15132-SK; 3) In re GGW Events, LLC, 13-bk-15134-SK; and
4) In re GGW Magazine, LLC, 13-bk-15137-SK.

[3]  Francis opposed the Revocation Motion and appealed the Revocation Order to the District Court for
the Central District of California (Revocation Appeal). Francis v. Neilson (In re GGW Brands, LLC), 13-
04162-FMO, Docket #1. The Revocation Appeal was dismissed on 8/7/13 for failure to prosecute.
Francis v. Neilson (In re GGW Brands, LLC), 13-04162-FMO, Docket #7.

[4]  The Original GGW Debtors and GGW Marketing, LLC are referred to collectively as "the Debtors".

### b. Neilson v. Francis

On 4/23/13, the Trustee filed a "Complaint for Injunction and Damages" (Complaint) against Francis. AP Docket #1. In the Complaint, the Trustee alleged that after he was appointed as the Trustee of the Original GGW Debtors, Francis attempted to exercise control over the Original GGW Debtors' property and employees (Employees) by: 1) making violent threats to and attempting to fire the Employees; 2) being verbally abusive to the Employees; and 3) having the Employees perform personal services for him. Complaint ¶¶ 13, 15. In the Complaint, the Trustee sought damages for Francis's violation of the automatic stay and an injunction against Francis's interference with the Original GGW Debtors' operations. Id. ¶¶ 17-29.

### i. TRO

Also on 4/23/13, the Trustee filed an "Emergency Motion for . . . Temporary Restraining Order . . . Against Joseph R. Francis" (TRO Motion). AP Docket #3. In the TRO Motion, the Trustee sought to enjoin Francis from 1) "communicating with the [Original GGW] Debtors' [E]mployees . . . or attempting to exercise influence or control over any [E]mployees rendering services to [the Original GGW] Debtors;" 2) "coming within 100 feet of the [Original GGW] Debtors' offices or its [E]mployees;" and 3) "interfering with the Trustee's control of the [Original GGW] Debtors' assets." Id. ¶ 1. The next day, the Court held a hearing and granted the TRO Motion. On 4/25/13, the Court issued a "Temporary Restraining Order and Order to Show Cause Why a Preliminary Injunction Should not Issue Against Joseph R.  Francis" (TRO). AP Docket #16. The TRO prohibited Francis and his agents, servants, employees, attorneys, and those persons in concert or participation with him from:

- Communicating with [the Original GGW Debtors'] [E]mployees (including those employees of [PSL] who are leased by [the Original GGW Debtors]) [including] calling, e-mailing, texting, faxing, or otherwise contacting, engaging with, or attempting to exercise influence or control over any [E]mployees rendering services to [the Original GGW Debtors].

- Coming within 100 feet of [the Original GGW Debtors'] offices (located at 10940 Wilshire Boulevard, Los Angeles, California 90024) or its [E]mployees (including those employees of [PSL] who are leased by [the Original GGW Debtors]).

- Interfering with the Trustee's control of [the Original GGW Debtors'] assets (including any servers or computers that have [the Original GGW Debtors'] electronically stored information).

- Threatening or harassing [E]mployees of [the Original GGW Debtors] or Argyle Online, LLC (including those employees of [PSL]

2

who are leased by [the Original GGW Debtors] or by Argyle Online, LLC).

Id. at 4.[5]

The TRO ordered Francis to show cause why a preliminary injunction should not issue (First OSC), and set a hearing on 5/8/13 (First OSC Hearing). Id. at 4-5.[6]

### ii.   Stipulation and Consent Order

On 4/30/13, the Trustee filed an "Emergency *Ex Parte* Application to Enforce and, to the Extent Necessary, Clarify and Expand Temporary Restraining Order by Specifically Naming Additional Parties" (Ex Parte). AP Docket #25. In the Ex Parte, the Trustee argued that Francis both personally, and through others, violated the TRO. Id. at 3. Specifically, the Trustee alleged that Francis's driver, acting at Francis's request, had picked up a Cadillac Escalade belonging to GGW Events, LLC from a repair shop, signed a release, and drove it to Francis's residence. Id. When Francis's driver was instructed to return the car to the Debtors, he refused and threatened the Trustee's counsel. Id.

The Trustee stated that Abbey Wilson (Wilson), Francis's girlfriend, would be installed as the new manager of PSL. Id. According to the Trustee, Wilson directed Equity Office Properties (EOP), the "lessor of office space to [PSL],"[7] located at 10940 Wilshire Boulevard, Los Angeles, California 90024 (Premises), to change access cards for the door to the suite occupied by the Trustee and the Original GGW Debtors and to terminate parking for the Trustee's and Original GGW Debtors' personnel. Id. at 3-4. Wilson then terminated several PSL, Argyle Online, LLC (Argyle Online), and Argyle Media employees. Id. at 4. Based on these assertions, the Trustee requested that the TRO be amended to: 1) explicitly name PSL, Argyle Online, and Wilson as additional persons (Additional Parties or Additional Persons); and 2) require PSL, Argyle Online, and Wilson to show cause why they should not be held in contempt. Id. at 5.

On 5/1/13, the Trustee, Francis, Wilson, PSL, and Argyle Online filed a "Stipulation Resolving Emergency *Ex Parte* Application to Enforce and, to the Extent Necessary, Clarify and Expand Temporary Restraining Order by Specifically Naming Additional Parties" (Stipulation). AP Docket #30. Wilson—both individually and as the manager of

---

[5]   For ease of reference, the Court cites the page numbers on the electronically filed documents' headers.

[6]   Francis and the Trustee stipulated to continue the First OSC Hearing several times. The First OSC Hearing was eventually held on 10/22/13. AP Docket #s 21, 23, 44, 47, 52, 54, 56, 58.

[7]   PSL subleased the Premises to the Original GGW Debtors. Ex Parte at 3 ("[EOP] [is] the lessor of office space to [PSL] (which . . . in turn subleases office space to the [Original GGW] Debtors).") After the Trustee was appointed, PSL and the Trustee agreed that the Debtors would continue to use the Premises and pay rent directly to the Landlord. AP Docket #30 at 3-4.

PSL and Argyle Online—and Francis initialed each page and signed the Stipulation. Id. at 7-8.

In the Stipulation, Francis, Wilson, PSL, and Argyle Online agreed not to:

3.    [T]ake any action that . . . impede[s] or attempt[s] to impede the access of the [Original GGW] Debtors, the Trustee, or any of the Trustee's and/or the [Original GGW] Debtors' personnel . . . from accessing, utilizing, conducting business and other similar activities at the Premises. Without limitation, this paragraph prohibits . . . entering the Premises save and except with the express permission of the Trustee.

4.    [T]ake any action that will interfere with the Trustee's and/or the [Original GGW] Debtors' ability to utilize personnel . . . performing services for the Trustee or the [Original GGW] Debtors . . . or communicat[e] with them in any way absent express permission of the Trustee. The preceding is intended to specifically prohibit abusive communications, telephone calls, and any and all other written . . . communications of any kind . . . .

. . .

7.    [] Francis and the Additional Persons shall promptly communicate to Landlord[8] the terms of this Stipulation and any order approving it. Landlord may take actions in good faith in reliance upon this Stipulation and any order approving it without liability to [] Francis and/or the Additional Persons. The Trustee may make payments directly to Landlord and Landlord shall not thereby have privity of contract or estate with the Trustee or the [Original GGW] Debtors, this payment arrangement being made solely for the convenience of the Trustee and Landlord . . . .

. . .

10.   a.    The Trustee is entitled to immediate possession of the following three automobiles, which are property of the [Original GGW] Debtors: (i) a 2007 Cadillac Escalade with a vehicle identification number ("VIN") ending 5603; (ii) a 2012 Bentley Flying Spur with a VIN ending 0815; and (iii) a 2008 Mercedes Benz SL65 with a VIN

---

[8]   The Stipulation defines the "Landlord" as "CA-The Tower Limited Partnership" (The Tower). Stipulation at 2. The Court notes that the Ex Parte identified EOP as the "lessor of office space to [PSL]." Ex Parte at 3. During the Hearing, Nicholas Troszak (Troszak) explained that The Tower "is what the building is called," EOP "is the management company," the Trustee paid rent to EOP, and met with EOP "for any issues." BK Docket #623 at 56:2-12. Because the parties have not drawn any distinction between EOP and The Tower, the Court will refer to EOP and The Tower individually and collectively as "the Landlord" and will draw no distinction between the two.

ending 0237.[9] The preceding automobiles (each a "Vehicle" and, collectively, the "Vehicles") are currently in [PSL's] and/or [] Francis's possession.

b. [PSL] and/or [] Francis may continue in possession of the Vehicles provided they maintain the Vehicles in good condition and . . . pay the Trustee $750 per month ($250 per month per Vehicle) for the use of the Vehicles commencing May 1, 2013.[10] . . . If payment is not timely made, then [] Francis and/or [PSL] shall promptly deliver to the Trustee . . . the Vehicles and all keys to the Vehicles. If not promptly delivered, then the Trustee may, on 24 hours' notice, obtain an order from the Bankruptcy Court commanding and permitting the repossession by the Trustee of such Vehicles.

c. Neither [PSL] nor [] Francis nor the Additional Persons shall move for relief from the automatic stay to terminate the Trustee's month-to-month lease on or occupancy of the Premises until on or after July 31, 2013. The Trustee may give 30 days' notice of his intent to vacate the Premises at any time.

. . .

e. In the event the Trustee gives notice of his intent to vacate the Premises, [PSL] and [] Francis shall, upon the actual vacation of the Premises by the Trustee deliver to the Trustee or his designated representative the Vehicles and all keys to the Vehicles.

Id. at 5-6.

On 5/2/13, the Court entered an "Order Approving Stipulation Resolving Emergency *Ex Parte* Application to Enforce and, to the Extent Necessary, Clarify and Expand Temporary Restraining Order by Specifically Naming Additional Parties," (Consent Order), which provided that:

1. The Stipulation is approved in its entirety. The failure to state any term of the Stipulation below shall not constitute any non-approval of such term.

. . .

4. [N]either [] Francis nor any of the Additional Persons nor . . . others acting in concert with . . . any of the preceding will take any action that will

---

9 Francis crossed out the words "a 2008 Mercedes Benz SL65 with a VIN ending 0237" and scribbled in the margin "only have 2 cars." Stipulation at 5. Later, Francis crossed out that note and wrote "only 1 car." Id.

10 Francis crossed out $750 and wrote $500. Stipulation at 4.

impede or attempt to impede the access of the [Original GGW] Debtors, the Trustee, or any of the Trustee's and/or [Original GGW] Debtors' personnel, [E]mployees, agents, attorneys or any other persons working with or for them from accessing, utilizing, conducting business and other similar activities at the Premises. . . .

5.      [N]either [] Francis nor any of the Additional Persons nor . . . others acting in concert with . . . any of the preceding will take any action that will interfere with the Trustee's and/or the [Original GGW] Debtors' ability to utilize personnel currently performing services for the Trustee or the [Original GGW] Debtors, including but not limited to those personnel "leased" from [PSL] and/or Argyle [Online]. . . . [T]his paragraph prohibits terminating the employment of any person or individual presently employed by [PSL] or Argyle [Online] providing services to the Trustee and/or the [Original GGW] Debtors, not processing payroll for such individuals, or communicating with them in any way absent express permission of the Trustee. . . .

. . .

7.      Any entity or person . . . that acts in violation of the TRO or this Stipulation shall be jointly and severally liable for all damages caused by such conduct, as well as all legal fees and costs incurred by the Trustee or the [Original GGW] Debtors in redressing such conduct. . . .

8.      Landlord may take actions in good faith in reliance upon the Stipulation and this order approving it without liability to [] Francis and/or the Additional Persons. The Trustee may make payments directly to Landlord and Landlord shall not thereby have privity of contract or estate with the Trustee or the [Original GGW] Debtors, this payment arrangement being made solely for the convenience of the Trustee and Landlord. . . .

. . .

11.     The Trustee is entitled to immediate possession of . . . : (i) a 2007 Cadillac Escalade with a vehicle identification number ("VIN") ending 5603; and (ii) a 2012 Bentley Flying Spur with a VIN ending 0815. The [Vehicles] are currently in [PSL's] and/or [] Francis's possession.

12.     [PSL] and/or [] Francis may continue in possession of the Vehicles provided they maintain the Vehicles in good condition and shall pay the Trustee $500 per month ($250 per month per Vehicle) for the use of the Vehicles commencing May 1, 2013. . . .

13.     Neither [PSL] nor [] Francis nor the Additional Persons shall move for relief from the automatic stay to terminate the Trustee's month-to-month

lease on or occupancy of the Premises until on or after July 31, 2013.  The
Trustee may give 30 days' notice of his intent to vacate the Premises at
any time.

. . .

15.    In the event the Trustee gives notice of his intent to vacate the Premises,
[PSL] and [] Francis shall, upon the actual vacation of the Premises by the
Trustee deliver to the Trustee or his designated representative the
Vehicles and all keys to the Vehicles.

AP Docket #32 at 2-5.  The Consent Order was "approved as to form" by counsel for
Francis, Wilson, PSL, and Argyle Online, and by counsel for the Trustee.  Id. at 5.

iii.    Preliminary Injunction

Following a series of stipulations, on 6/7/13, the Court entered an order continuing the
First OSC Hearing to 10/22/13 (10/22/13 Hearing) and setting a 9/24/13 deadline for
filing a response to the First OSC.  AP Docket #58.  On 10/1/13, Francis filed an
untimely response to the First OSC (Untimely Response).  AP Docket #79.  On 10/2/13,
the Court issued an order stating that pursuant to Local Bankruptcy Rule (LBR) 9013-
1(h), it would not consider the Untimely Response and that it deemed Francis's failure
to timely file an opposition to be consent to granting a preliminary injunction.  AP Docket
#82.

During the 10/22/13 Hearing, the parties were given an opportunity to be heard.  At the
conclusion of the 10/22/13 Hearing, the Court entered a "Preliminary Injunction" (PI),[11]
which provided, in pertinent part, that:

1.    Until the earlier of (i) the conclusion of the above-captioned adversary
proceeding or (ii) the modification or dissolution of [the PI], [] Francis and
his agents, servants, employees, attorneys, and those persons in concert
or participation with him, are HEREBY ENJOINED AND RESTRAINED
from:

• Communicating with [the Debtors'] [E]mployees.  Enjoined
communications shall include, without limitation, calling, e-mailing,
texting, faxing, or otherwise contacting, engaging with, or attempting to
exercise influence or control over any [E]mployees rendering services
to [the Debtors].

---

[11]   Neither Francis, Wilson, PSL, nor Argyle Online appealed the PI, and the time for appeal has expired.
FRBP 8002(a); see In re Excel Innovations, Inc., 502 F.3d 1086, 1092 (9th Cir. 2007) (stating that an
"injunction granted by the bankruptcy court constitutes an appealable final decision"); In re Fabtech
Indus., Inc., 2010 WL 6452908, at *3 (B.A.P. 9th Cir. 2010) ("[A]n injunction granted by the bankruptcy
court is a final decision . . . .").

- Coming within 100 feet of [the Debtors'] offices (located at 10940 Wilshire Boulevard, Los Angeles, California 90024 (the "Premises")) or [their] [E]mployees.

- Interfering with the Trustee's control of [the Debtors'] assets (including, without limitation, any servers or computers that have [the Debtors'] electronically stored information).

- Threatening or harassing [E]mployees of [the Debtors] or Argyle Online . . . .

2. [] Francis, the Additional Persons and . . . others acting in concert with all or any of them are hereby ENJOINED AND RESTRAINED from any action that will impede or attempt to impede the access of the Debtors, the Trustee, or any of the Trustee's and/or the Debtors' personnel . . . from accessing, utilizing, conducting business and other similar activities at the Premises. Without limitation, this paragraph prohibits changing locks or combinations, activating or deactivating parking, elevator and suite keys and key cards or entering the Premises save and except with the express permission of the Trustee.

3. [] Francis, the Additional Persons and . . . others acting in concert with all or any of them are hereby ENJOINED AND RESTRAINED from taking any action that will interfere with the Trustee's and/or the Debtors' ability to utilize personnel currently performing services for the Trustee or the Debtors. Without limitation, this paragraph prohibits communicating with any of the Debtors' [E]mployees in any way absent express permission of the Trustee. The preceding is intended to specifically prohibit abusive communications, telephone calls, and any and all other written or oral communications of any kind . . . .

. . .

5. [A]ny entity or person . . . that acts in violation of this [PI] shall be jointly and severally liable for all damages caused by such conduct, as well as all legal fees and costs incurred by the Trustee or the Debtors in redressing such conduct. . . .

. . .

8. Each and every provision of the Consent Order is made part of this [PI] as if set forth herein.

AP Docket #86.

c. Sale

On 4/23/14, the Court entered an order (Sale Order) approving the sale of substantially all of the Debtors' assets to GGW Acquisition, LLC (GGWA) for $1,825,000 (Sale). BK Docket #s 551, 552. The Sale closed on 4/28/14. 5/8/14 Declaration of Jonathan Weiss, BK Docket #559 (Weiss 5/8/14 Decl.) ¶ 5.

II. Arguments and Second OSC

a. Contempt Motion

On 6/2/14, the Trustee filed a "Motion for Issuance of Order to Show Cause why Joseph R. Francis and Perfect Science Labs, LLC Should not be Held in Contempt," in which he asserted the following (Contempt Motion). BK Docket #570. On 4/28/14, the Trustee's counsel sent Francis's and PSL's counsel a letter, which noted that pursuant to the Stipulation and the Consent Order, the Trustee "may give 30 days' notice of his intent to vacate the Premises at any time" (4/28/14 Letter). 6/2/14 Declaration of Matthew C. Heyn, BK Docket #570 (Heyn 6/2/14 Decl.) ¶ 5, Ex. B. In the 4/28/14 Letter, the Trustee's counsel stated that he and the Debtors would vacate the Premises by noon on 5/28/14, and that "[a]fter that time, the Trustee and the Debtors will not be liable and will not pay rent for use of the Premises." Id. The Trustee's counsel did not receive a response to the 4/28/14 Letter. Id. ¶ 5.

On 5/2/14, the Trustee's counsel sent another letter to Francis's and PSL's counsel (5/2/14 Letter). Id. ¶ 6, Ex. C. In addition to repeating the Trustee's intent to vacate the Premises on 5/28/14, the letter referenced Francis's obligation to return the Vehicles to the Trustee by 5/28/14, pursuant to the Stipulation and Consent Order. Id. The Trustee's counsel requested delivery of the Vehicles by noon on 5/28/14. Id. The Trustee's counsel did not receive a response to the 5/2/14 Letter. Id. ¶ 6.

On 5/9/14, at approximately 3:50 p.m., Francis and Wilson entered the Premises "without invitation," 5/22/14 Declaration of Tristen Lazareff, BK Docket #570 (Lazareff 5/22/14 Decl.) ¶ 4, and "shouted profanities at . . . [GGWA's] employees while acting in a physically threatening manner." Id. ¶ 5. Specifically, Francis moved "close" to employees, shouted profanities at the employees, and told the employees they were no longer "legally allowed to be on the [P]remises." Id.

Several employees reminded Francis that his presence at the Premises was a violation of a court order and asked Francis and Wilson to leave. Id. ¶ 6. They refused to do so. Id. The employees then called the police. Id. During this time, Francis "screamed" and "demanded" entrance to his former office. Id. ¶ 7. At approximately 4:00 p.m., the Landlord arrived at the Premises and warned Francis that his presence was in violation of a court order. Id. ¶ 8. Francis then became "verbally abusive and acted in a physically threatening manner" toward the Landlord. Id. ¶ 9. Francis and Wilson left the Premises after learning that the police were en route. Id. ¶ 10.

9

On 5/9/14 at 4:54 p.m., the Trustee's counsel sent an email to Francis's and PSL's counsel, which stated:

> I am informed that today [] Francis came to the Debtors' offices (10940 Wilshire Blvd., Suite 1000, Los Angeles, California) today [sic] and attempted to make trouble. I understand that he was screaming at employees and otherwise being disruptive. The building has removed Francis from the [P]remises.
>
> As you know, the Debtors are in the process of vacating the offices and will be out by May 28. The Debtors have paid rent through May 28. Until then, [] Francis is prohibited from "[c]oming within 100 feet of GGW's offices (located at 10940 Wilshire Boulevard, Los Angeles, California 90024 (the 'Premises')) or its [E]mployees." Today's actions are in direct violation of the [PI] and may constitute contempt of Court. The Trustee reserves his rights with respect thereto.

Heyn 6/2/14 Decl. ¶ 7, Ex. D (5/9/14 Email). The Trustee's counsel did not receive a response to the 5/9/14 Email. Id. ¶ 7. Further, on 5/15/14, the Landlord's counsel sent a letter to Francis's and PSL's counsel stating that:

> [A]s you . . . know, last Friday [] Francis of PSL violated the October 22, 2013 [PI] when he came to the Premises and demanded access to space . . . . Notwithstanding [] Francis'[s] repeated statements on several different occasions last Friday afternoon to my client and/or me that the [PI] was no longer in force, that the Trustee was no longer in possession of the Premises, and that he had a "right" to enter the Premises, none of that is true. The [PI] remains in place, the Trustee remains in possession of the Premises until May 28, 2014, and [] Francis has no rights to enter the Premises at this time, absent further order from the Court. Landlord is also subject to the [PI].

. . .

Id. ¶ 9, Ex. E (5/15/14 Landlord Letter).

On 5/16/14 at approximately 5:40 p.m.—a week after Francis and Wilson first entered the Premises—Francis and Wilson entered the Premises again "without invitation." Lazareff 5/22/14 Decl. ¶ 11; 6/17/14 Declaration of Joseph Francis, BK Docket #601 (Francis 6/17/14 Decl.) ¶ 9; 6/17/14 Declaration of Abbey Wilson, BK Docket #601 (Wilson 6/17/14 Decl.) ¶ 9. A security guard attempted to escort Francis off the Premises, but Francis refused and began threatening the guard and employees. Lazareff 5/22/14 Decl. ¶ 12. Adam Levin (Levin), Vice President of GGWA, rushed to the Premises after employees informed him of Francis's presence. 5/22/14 Declaration of Adam Levin, BK Docket #570 (Levin 5/22/14 Decl.) ¶¶ 2, 4. Francis began spewing profanities and making derogatory and offensive statements to Levin. Id. ¶¶ 5, 6.

Francis also pushed Levin "violently." Id. ¶ 7. Several employees "were reduced to tears." Lazareff 5/22/14 Decl. ¶ 13. The police then arrived and detained Francis. Id.

On 5/28/14, the Trustee's counsel emailed Francis's and PSL's counsel to notify him that the Debtors had completely vacated the Premises (5/28/14 Email). Heyn 6/2/14 Decl. ¶ 10, Ex. F. In the 5/28/14 Email, the Trustee's counsel stated that he would be amenable to a stipulation to terminate the PI related to the Premises—with one caveat—so that PSL could be comfortable that anyone it permitted may occupy the Premises. Id. The caveat related to the Vehicles and the Trustee reiterated Francis's and PSL's obligation to return the Vehicles. Id. The Trustee's counsel further requested that Francis's and PSL's counsel notify him when and how his clients intended to return the Vehicles and stated that the Trustee would seek relief from the Court if Francis and PSL did not provide an acceptable proposal. Id.

In the Contempt Motion, the Trustee argued that Francis blatantly violated the PI and Consent Order by: 1) refusing to deliver the Vehicles to the Trustee; 2) repeatedly entering the Premises; and 3) interfering with the removal of property sold to GGWA. Contempt Motion at 13-15. The Trustee requested that the Court issue an order to show cause, set a date for a contempt hearing, and enter an order holding Francis and PSL in civil contempt. Id. at 18. The Trustee seeks: 1) return of the Vehicles; 2) sanctions of $5,000 per day after entry of a contempt order until Francis and PSL return the Vehicles; and 3) the Trustee's attorneys' fees and costs incurred due to Francis's and PSL's conduct. Id.

  b.  Second OSC

Pursuant to LBR 9020-1(b), any objection to the issuance of an order to show cause must be filed within seven days. "If a written explanation is not timely filed and . . . served, the [C]ourt may conclude that there is no objection to issuance of the order to show cause." LBR 9020-1(d)(1). Neither Francis nor PSL filed a timely response to the issuance of an order to show cause.

On 6/10/14, the Court entered the Second OSC, finding that "cause exists to believe that [] Francis and [PSL] have violated and continue to violate the Consent Order and the [PI]." BK Docket #585. The Second OSC provided that:

  A.  [] Francis and [PSL] (through its authorized and knowledgeable designee) shall appear before this Court at a hearing on July 10, 2014, at 10:00 a.m., (the "Hearing") . . . to show cause, if any, why they should not be held in contempt of Court for the alleged violations of the Consent Order and [PI]. Pursuant to [LBR] 9013-1(i), all parties are notified that the Court may permit any party to submit witness testimony at the Hearing.

  B.  On or before June 19, 2014 at 12:00 noon, [] Francis and [PSL] shall file and serve a written explanation, if there is an explanation, why they should not be held in contempt of Court for the alleged violations of the Consent Order and

11

[PI]. During the Hearing, the Court may treat as true any uncontroverted facts established by declaration and limit testimony to controverted facts only.

C. [] Francis's and [PSL]'s written explanation shall address the allegation in the [Contempt] Motion that [] Francis and [PSL] are in continuing violation of Paragraph 15 of the Consent Order and Paragraph 8 of the [PI] due to their failure to return to the Trustee two vehicles (together, the "Vehicles"): (i) a 2007 Cadillac Escalade with a vehicle identification number ("VIN") ending 5603, and (ii) a 2012 Bentley Flying Spur with a VIN ending 0815.

D. [] Francis's written explanation also shall address the allegation in the [Contempt] Motion that [] Francis violated the [PI] by repeatedly entering the Debtors' former office located at 10940 Wilshire Boulevard, Los Angeles, California 90024 (the "Premises") on May 9, 2014 and May 16, 2014, and, while at the Premises, assaulted, battered, and harassed several individuals.

E. If [] Francis and/or [PSL] files such written explanation, the Trustee may file an optional response on or before June 26, 2014 at 12:00 noon. The Trustee may submit supplemental evidence of the damages caused by [] Francis's and [PSL's] alleged violation of the Consent Order and [PI] in his optional response or at the Hearing.

Second OSC at 2-4.

    c. Response

On 6/19/14, Francis and PSL timely filed a Response to the Second OSC in which they argue that on 5/9/14 and 5/16/14,[12] when Francis and Wilson entered the Premises, the "Debtors were no longer" at that location. Response at 7. Specifically, Francis and PSL contend that after the 4/28/14 Sale, GGWA and its employees—and not the Debtors—occupied the Premises. Id. Therefore, according to Francis and PSL, the PI no longer applied to the Premises, because the purpose of the PI was to protect the Debtors' Employees. Id. at 4, 7.

Francis and PSL highlight that GGWA applied for a Workplace Violence Restraining Order and contend that under California Code of Civil Procedure (CCP) § 527.8, only an employer may apply for such a restraining order to prevent the threat of violence against its employees. Id. at 6.[13] Francis and PSL assert that the Trustee and the Trustee's

---

[12] The Response incorrectly asserts that the second time Francis and Wilson went to the Premises was 5/14/14; it was actually 5/16/14. Response at 4; see Lazareff 5/22/14 Decl. ¶ 11; Levin 5/22/14 Decl. ¶ 4; Francis 6/17/14 Decl. ¶ 9.

[13] Francis also highlights that PSL is the lessee of the Premises, that the Debtors have occupied the Premises "hostilely" against PSL's wishes, and that the PI has kept PSL and Francis, "who had an office at PSL, out of their own offices." Response at 6. According to Francis and PSL, on 5/9/14 and 5/16/14, Francis and Wilson were at the Premises for the "legitimate purpose of confirming that personal property

12

counsel is attempting improperly to extend the PI to GGWA's hostile occupancy of the Premises. Id. According to Francis and PSL, the Trustee's payment of rent through 5/28/14 was not sufficient for the PI to remain in force after the Sale. Id. at 6-7.

Alternatively, Francis and PSL allege that even if the Court interprets the PI differently, they cannot be held in civil contempt because their actions were based on a reasonable interpretation of the PI. Response at 7-8. To support this argument, they cite In re Dual Deck Video Cassette Recorder Antitrust Litigation, 10 F.3d 693, 695 (9th Cir. 1993), which states that "a person should not be held in contempt if his action '"appears to be based on a good faith and reasonable interpretation of the [court's order].'"

Francis and PSL then acknowledge that "[a]lthough not relevant to the issue of whether the [PI] was violated," the interaction between Francis and GGWA's employees was very different from what was represented in the Lazareff 5/22/14 Decl. and the Levin 5/22/14 Decl. Response at 8. According to Francis, GGWA's officers and employees were the "aggressors and even physically assaulted [] Wilson, who is pregnant with twins." Id.; Francis 6/17/14 Decl. ¶¶ 8-10; Wilson 6/17/14 Decl. ¶¶ 10-12.

Francis and PSL assert that even if the Court were to find that they violated the PI, the costs and fees incurred by the Trustee "with respect to [the Contempt Motion]" should not be awarded because civil contempt sanctions cannot be punitive. Response at 8. Francis claims that the Debtors and GGWA have vacated the Premises, there is no need to seek future compliance, and the Trustee has not presented any evidence of losses to the Debtors. Id.

Finally, Francis alleges that he and PSL are unable to produce the Vehicles as required by the Consent Order because the Vehicles were taken on 5/23/14 without his or PSL's consent. Id. at 8-9. Francis claims that agents of Terry Williston (Williston) and his company, DGL ITSMO SA DE VC (DGL) took the Vehicles in Mexico, "in execution of [Williston's and DGL's] claimed rights to such Vehicles" based on the Debtors' alleged breach of an agreement "whereby the Debtors were to conduct a number of promotional events" at a Mexican strip club owned by DGL. Id. at 9; Francis 6/17/14 Decl. ¶ 12. According to Francis, he is "powerless" to retrieve the Vehicles under Mexican law and Williston's agents refuse to return them. Francis 6/17/14 Decl. ¶ 12.

> d. Reply

In the Reply, the Trustee asserts that: 1) Francis's 5/9/14 and 5/16/14 entry onto the Premises violated the clear and unambiguous terms of the PI; 2) Francis's testimony regarding the Vehicles is self-serving, uncorroborated, and cannot prove that the Francis is unable to comply with the Consent Order; and 3) under the circumstances, compensatory damages and sanctions are appropriate. BK Docket #605 at 3, 5, 8.

---

of PSL and Francis was not being removed from PSL's offices." Id.; Francis 6/17/14 Decl. ¶ 7; Wilson 6/17/14 Decl. ¶ 9.

The Trustee argues that there is only "one reasonable interpretation of the [PI]: it prohibits Francis from coming within 100 feet of the Premises." Id. at 5. According to the Trustee, Francis does not dispute that the Trustee's counsel notified Francis's counsel that the Debtors would vacate the Premises on 5/28/14, and that the Trustee paid rent for the Premises through 5/28/14. Id. at 4. On 5/9/14, after Francis was removed from the Premises, the Trustee's counsel notified Francis's counsel that the Debtors had paid rent through 5/28/14, until then the Debtors occupied the Premises, and Francis's actions that day were "in direction violation of the [PI]." Id.; Heyn 6/2/14 Decl. ¶ 7, Ex. D. Further, on 5/15/14, the Landlord's counsel also advised Francis's counsel that the Trustee would remain in possession of the Premises until 5/28/14, the PI remained in place, and Francis "has no rights to enter the Premises at this time, absent further order from the Court." Reply at 4; Heyn 6/2/14 Decl. ¶ 9, Ex. E.

The Trustee next asserts that even if the Premises had to be the Debtors' offices on 5/9/14 and 5/16/14, Francis violated the PI because the Premises were the Debtors' offices until 5/28/14. Reply at 3. The Trustee permitted GGWA to use the Premises to facilitate the smooth transfer of assets, but the Trustee and the Debtors nevertheless remained in possession of the Premises. Id. at 3 n.3. The Debtors were required to continue their occupancy of the Premises to receive mail and payments for pre-closing sales, and many of the Debtors' records "continued to be at the Premises." Id.

The Trustee goes on to argue that Francis's own testimony demonstrates that he knew the Trustee had not vacated the Premises on 5/9/14 or 5/16/14. Id. at 4. The Trustee notes that the Consent Order required Francis to return the Vehicles "'upon the actual vacation of the Premises by the Trustee.'" Id.; Consent Order ¶ 15. According to the Trustee, if Francis and PSL believed that the Debtors had vacated the Premises, then he was required to return the Vehicles. Reply at 4-5. And, Francis does not explain why he did not return the Vehicles before he and Wilson entered the Premises on 5/9/14 and 5/16/14. Id.

In terms of the Vehicles, the Trustee argues that Francis's explanation and credibility are suspect and he has not demonstrated that it was impossible for him to comply with the Consent Order and PI. Id. at 5-6. The Trustee contends that the Response, the Francis 6/17/14 Decl., and the Wilson 6/17/14 Decl. are "devoid of any detail or documentary evidence corroborating Francis's remarkable story," including any evidence of the alleged agreement between the Debtors and Williston, the applicable Mexican law under which Francis is "powerless" to retrieve the Vehicles, information about why the Vehicles were in Mexico in the first place, and the address of Williston and DSL. Reply at 6-8.

The Trustee argues that if Francis's explanation were true, he would have notified the Trustee after the Trustee's repeated inquiries about the Vehicles. Id. at 7. Instead, Francis never told the Trustee that Williston took the Vehicles; the Trustee only learned about it when he received the Response. Id. Based on the dearth of evidence, the Trustee argues that Francis failed to demonstrate that he "exhausted all avenues to comply with the order" to satisfy his burden of proving impossibility. Id. And, the

14

Trustee argues that Francis has "a well-established history of providing self-serving
false evidence to this Court by declaration to manufacture facts that would frustrate the
Trustee's clear right to relief," citing the Court's final ruling on the Trustee's motion for
summary judgment in Argyle Online, LLC v. Neilson, 13-01552-SK, Docket #137 at 37
(finding that a declaration submitted by Francis fell within the purview of the sham
affidavit rule). Reply at 6.

The Trustee also highlights an inconsistency between Francis's and PSL's Opposition
and the Francis's 6/17/14 Decl. regarding where the Vehicles were parked, and where
Williston, DSL and the strip club were located. Reply at 8. In the Francis 6/17/14 Decl.
¶ 12, Williston and DSL are described as being from Guadalajara, Mexico, the strip club
where the promotional events were supposed to be conducted were in Guadalajara,
and the Vehicles were parked in Guadalajara when then were seized. In contrast, the
Response indicated that "[t]he explanation offered by [Francis for why he was unable to
turn over the Vehicles] in his Declaration bears repeating in its entirety here," and
indicates that the Vehicles were seized from Puerto Vallarta, Mexico, the strip club was
located in Puerto Vallarta, and Williston and DSL were from Puerto Vallarta. Response
at 9.[14] The Trustee concludes that this discrepancy reveals how Francis, PSL, and their
counsel "cannot keep their stories straight." Reply at 8. Although Francis and PSL
assert that DSL and/or Williston are purported creditors of the Debtors, the Trustee
notes that neither DSL nor Williston filed a proof of claim in any of the Debtors' cases
and the Debtors' schedules do not list any claim or contract with DSL or Williston. Id. at
7.

The Trustee asserts that Francis admits compensatory damages are appropriate to
compensate for losses caused by a contemnor's past noncompliance and to coerce
future compliance. Id. at 8. The Trustee believes Francis's complaint is that the
Trustee did not present evidence of his losses resulting from Francis's conduct. Id. at 8-
9. The Trustee highlights, however, that he was authorized to submit additional
evidence "of the damages caused by" Francis's and PSL's alleged violation of the
Consent Order and PI either in the Reply or at the Hearing. Second OSC at 3-4. The
Trustee submits evidence demonstrating that his counsel incurred $40,228 in fees
through 6/23/14 and anticipates that they will incur an additional $20,000 in fees through
7/10/14—the date of the Hearing. Reply at 8-9; 6/26/14 Supplemental Declaration of
Matthew Heyn, BK Docket #605 (Heyn 6/26/14 Decl.) ¶ 6, Exs. G, H. The Trustee also

---

[14]   On 7/1/14, Francis and PSL filed a "Notice of Errata and Correction to Response . . ." (Errata). BK
Docket #617. The Errata asserts that Francis's and PSL's counsel drafted the Response and the Francis
6/17/14 Decl. based on statements Francis made to him and he "assumed that the events took place in
Puerto Vallarta, Mexico because that is where [Francis] spends a significant amount of time." Errata at 2.
When Francis reviewed the Francis 6/17/14 Decl., he informed his counsel that "the events occurred in
Guadalajara, Mexico . . . and that the creditor was also based in Guadalajara, Mexico." Errata at 2. But,
Francis's and PSL's counsel, "through oversight[,] neglected to change the language in the body of" the
Response. Id. The Court notes that Francis and PSL have not provided any admissible evidence
substantiating this explanation for the discrepancy. In re Hurley, 258 B.R. 15, 23 (Bankr. D. Mont. 2001)
("[A]n attorney's argument is not evidence.").

highlights that in the Opposition, Francis did not object to sanctions of $5,000 per day. Reply at 9. Therefore, the Trustee concludes that these sanctions are appropriate. Id.

    e. Hearing

During the Hearing, the Trustee presented live testimony from Levin and Troszak. BK Docket #623 at 15-42, 47-70. The Trustee also showed a surveillance video from outside of the building where the Premises is located, as well as video from inside and immediately outside of the Premises. Id. at 16-20, 43-45. Francis and PSL presented no live testimony but they showed a video, with audio, of the inside and immediately outside of the Premises. Id. at 80. Both sides stipulated to the authenticity and admissibility of the video evidence. Id. at 13:16-14:2.

Levin, who is the vice president of GGWA, testified that on 5/9/14, the Debtors were "conducting business" at the Premises, including "cutting checks [and] doing their accounting." Id. at 29:3-8. Levin estimated that on 5/9/14, the Debtor had more than 100 boxes at the Premises, they maintained all of their records at the Premises, and they were using two or three of the 12, 13 offices, as well as the storage at the Premises. Id. at 29:3-14, 30:19-31:1. According to Levin, on 5/16/14, GGWA was "utilizing the space of the [Debtors] as part of the transition," and several of GGWA's employees "who were there and were also doing work for the [Debtors] at that time." Id. at 15:17-16:1.

Troszak, a financial advisor and bankruptcy accountant employed by the Trustee, testified that the Debtors had no offices other than the Premises during their bankruptcy cases, they paid rent for the Premises through 5/28/14, and they vacated the Premises on that date. Id. at 47:17-20, 48:4-8, 49:11-25. He stated that the Sale did not include all of the Debtors' property. Id. at 51:14-19. According to Troszak, the Debtors did not sell "[a]ccounting records, documents, [and] four cars." Id. at 51:18-19.[15] Regarding the documents, Troszak stated that the Debtors had their electronic files, QuickBooks, hard copy records, and Employee files at the Premises and those documents were at the Premises through 5/16/14. Id. at 52:8-14, 60:10-14. Troszak testified that the documents were moved "near the end," and that he picked up the last of the Debtors' documents on 5/28/14. Id. at 52:17, 53:1-3. Troszak indicated that the Cars were also parked at the Premises and remained there through the majority of May. Id. at 52:2-6.

Troszak further testified that the Debtors were conducting business at the Premises in May 2014. Id. at 52:17-54:2. Troszak explained that "customers pay 30, 60, 90 days after they get product, so [the Debtors] still had revenues coming in, expenses need to be paid, so they were handling all that" at the Premises on 5/9/14 and on 5/16/14. Id. at 52:20-21, 53:18-54:2. Also during May 2014, the Debtors continued "administering the estate" at the Premises, and the Debtors' mail still came to the Premises. Id. at 53:8-10, 57:23-24.

---

[15]  Troszak referred to the Vehicles as well as two other cars, a Volkswagen Routan and a Toyota Prius. The Court refers to the Volkswagen Routan and the Toyota Prius collectively as "the Cars".

In terms of the Employees, Troszak testified that during May 2014, the Debtors were using "individuals at [the Premises]." Id. at 53:8-10. Troszak mentioned that there was a clause in the sale agreement between the Debtors and GGWA indicating that before and after the closing of the Sale, employees would be used "to ensure a smooth transition from . . . the [D]ebtors to the new owners." Id. at 57:16-21. According to Troszak, the employees had "been doing it for so long and we kept them, you know, doing normal operations. We tried to make it as smooth as possible, the transition period, so we kept all of them . . . doing the same and just accounted for it. And then we would do a reconciliation every two weeks on who wrote who and we'd true up." Id. at 53:11-17; see id. at 56:13-16 (Troszak clarified that the reconciliation of who owed whom was between the Debtors and GGWA.[16]). Although the Debtors "were not paying individuals, . . . individuals were doing work for [the Debtors] at [the Premises]." Id. at 57:12-13. Troszak stated that after the Sale, he "worked quite a bit with the employees" as he had before the Sale "to make sure revenues were coming in." Id. at 57:21-23. On cross-examination, Troszak stated that although the Debtors were not paying the employees working at the Premises, and he did not consider them employees because the Debtors were not paying workers' compensation insurance or "anything like that," the employees were "conducting work for" the Debtors on 5/9/14 and 5/16/14. Id. at 66:20-67:2.

Troszak also stated that before the Hearing, he reviewed all of the Debtors' records. Id. at 48:21-49:2. He testified that the Debtors' records do not reflect any amount owing to Williston or DGL, and he was not aware of any contract between the Debtors and Williston and/or DGL. Id. at 55:2-7, 68:9-13, 69:4-10. After Francis and PSL filed the Response, Troszak searched the Debtors' records for "contracts or amounts owing" to Williston and DGL, but he did not find anything. Id. at 55:8-15. Troszak also did not find any "contract or receivables [owed] to any Mexican strip clubs." Id. at 55:16-18.

III. Legal Standard

Bankruptcy courts may sanction parties who fail to comply with court orders under section 105(a), which provides:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

Section 105(a) "allows a court to remedy a violation of a specific order . . . ." In re Dyer, 322 F.3d 1178, 1189-90, 1196 (9th Cir. 2003); see Barrientos v. Wells Fargo Bank, N.A., 633 F.3d 1186, 1190 (9th Cir. 2011); In re Hercules Enters., Inc., 387 F.3d 1024,

---

[16]  Although the transcript of the Hearing says "DWA," this is a typographical error. A review of the audio from the Hearing reveals that Troszak stated "GGWA" and not "DWA."

1027 (9th Cir. 2004); see generally In re Count Liberty, LLC, 370 B.R. 259, 272 (Bankr. C.D. Cal. 2007) (compiling cases).

"The standard for finding a party in civil contempt [under § 105(a)] is well settled: The moving party has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court." Renwick v. Bennett (In re Bennett), 298 F.3d 1059, 1069 (9th Cir. 2002) (internal quotation marks and citations omitted). The Court "is not required to find that a party willfully or intentionally failed to comply . . . ." In re Count Liberty, LLC, 370 B.R. at 273. A party is considered a contemnor if he has notice of a specific and definite court order, In re Dyer, 322 F.3d at 1191, but fails to take "'all the reasonable steps within [his] power to insure compliance with the [order].'" In re Crystal Palace Gambling Hall, Inc., 817 F.2d 1361, 1365 (9th Cir. 1987). "[T]he focus is not on the subjective beliefs or intent of the contemnors in complying with the order, but whether in fact their conduct complied with the order at issue." In re Dyer, 322 F.3d at 1191 (internal quotation marks omitted).

"[T]he contempt authority conferred on bankruptcy courts under § 105(a) is a *civil* contempt authority. As such, it authorizes only *civil* sanctions as available remedies." Id. at 1192 (emphases in original). "Civil penalties must either be compensatory or designed to coerce compliance." Id.; see In re C.W. Mining Co., 477 B.R. 176, 194-95 (B.A.P. 10th Cir. 2012) ("Sanctions for civil contempt must meet one or both of the following purposes: (1) to compel or ensure compliance with a court order; and (2) to compensate parties for losses caused by the contemnor's refusal to abide by a court order."); In re Free, 466 B.R. 48, 58 (Bankr. W.D. Penn. 2012) (stating that "[r]emedial sanctions are backward looking and are imposed to compensate the aggrieved party for damages caused by non-compliance" while coercive sanctions "are forward looking and are intended to coerce the defiant party to comply by setting forth penalties in advance which will be imposed for non-compliance"). Appropriate civil contempt sanctions may include "incarceration, fines, reimbursement for losses incurred in pursuing compliance with orders, or a combination of these." In re Free, 466 B.R. at 57.

The Court may fine the contemnor as compensation for actual damages caused by noncompliance. In re Count Liberty, LLC, 370 B.R. at 274. "Where the fine is not compensatory, it is civil only if the contemnor is able to avoid paying the amount imposed by performing the act required by the court's order." Id. at 274-75. Incarceration is an appropriate coercive sanction so long as "'the contemnor can avoid the sentence imposed on him, or purge himself of it, by complying with the terms of the original order.'" Id. (citing Hicks on Behalf of Feiock v. Feiock, 485 U.S 624, 635 n.7 (1988)).[17]

There is no "'good faith exception to the requirement of obedience to a court order.'" Peterson v. Highland Music, Inc., 140 F.3d 1313, 1323 (9th Cir. 1998) (quoting In re Dual Deck Video Cassette Recorder Antitrust Litig., 10 F.3d 693, 695 (9th Cir. 1993)).

---

[17]  The Trustee notes that he may seek further remedies, including incarceration, if Francis and PSL do not comply with any contempt order and return the Vehicles.  Contempt Motion at 4 n.3.

Similarly, a party "cannot disobey a court order and later argue that there were 'exceptional circumstances' for doing so." In re Crystal Palace Gambling Hall, Inc., 817 F.2d 1361, 1365 (9th Cir. 1987). A party, however, should not be held in contempt if his actions appear to be "based on a good faith and reasonable interpretation" of the court's order. Vertex Distribs., Inc. v. Falcon Foam Plastics, Inc., 689 F.2d 885, 889 (9th Cir. 1982) (quoting Rinehart v. Brewer, 483 F. Supp. 165, 171 (S.D. Iowa 1980)).

If the movant makes a prima facie showing of contempt, an alleged contemnor may rebut that showing by demonstrating the inability to comply with the court order. United States v. Bright, 596 F.3d 683, 695 (9th Cir. 2010); Oliner v. Kontrabecki, 305 B.R. 510, 520 (N.D. Cal. 2004) (holding that once the movant has met its burden, the burden "'shifts to the contemnors to demonstrate why they were unable to comply.'"). The party asserting impossibility must "show 'categorically and in detail' why he [was] unable to comply." FTC v. Affordable Media, LLC, 179 F.3d 1228, 1241 (9th Cir. 1999) (citations omitted). Although a party can testify regarding an inability to comply, a court has the discretion to discredit self-serving, uncorroborated testimony. Bright, 596 F.3d at 695; Maggio v. Zeitz, 333 U.S. 56, 75-76 (1948) (noting that an inability to comply is not established by evidence or the alleged contemnor's denials "which the court finds incredible in context").

### IV. Analysis

#### a. Admissibility of Declarations

##### i. Heyn 6/2/14 Decl., Heyn 6/26/14 Decl., Lazareff 5/22/14 Decl., and Levin 5/22/14 Decl.

The Heyn 6/2/14 Decl., Heyn 6/26/14 Decl., Lazareff 5/22/14 Decl., and Levin 5/22/14 Decl. were all admitted without objection.[18]  BK Docket #623 at 12:2-13:2.

##### ii. Williston 7/7/14 Decl.

On 7/8/14, Francis and PSL filed a "Request for Consideration of Declaration of Terry Williston in Support of [the Response]," attaching a 7/7/14 Declaration of Terry Williston (Williston 7/7/14 Decl.) (Request). BK Docket #620. In the Request, Francis and PSL asserted that they "just received" the Williston 7/7/14 Decl., and requested that the Court consider it "even though submitted after the deadline" for the Response. BK Docket #620. Francis and PSL, however, did not provide admissible evidence demonstrating that they "just received" the Williston 7/7/14 Decl. on 7/8/14. In re

---

[18]  During the Hearing, the Trustee's counsel did not seek to admit the 6/2/14 Declaration of R. Todd Neilson, BK Docket #570 (Neilson 6/2/14 Decl.), which was filed in support of the Contempt Motion. BK Docket #570. Francis and PSL did not object to the Neilson 6/2/14 Decl. in the Response or during the Hearing. The Neilson 6/2/14 was signed by the Trustee under penalty of perjury. BK Docket #570 at 20. Therefore, the Court can consider the statements contained in that declaration. Price v. Kramer, 200 F.3d 1237, 1252 (9th Cir. 2000) (stating that a party's failure to object to testimony at trial is deemed waiver of right to raise admissibility issues on appeal); see LBR 9013-1(i)(3) ("In lieu of oral testimony, a declaration under penalty of perjury will be received into evidence.").

Hurley, 258 B.R. 15, 23 (Bankr. D. Mont. 2001) ("[A]n attorney's argument is not evidence."). Nor did they provide evidence demonstrating efforts to obtain a declaration before the 6/19/14 response filing deadline.

Further, as the Court noted during the Hearing, the Williston 7/7/14 Decl. is not admissible because it does not comply with 28 U.S.C. § 1746, which requires that if a declaration is executed outside of the United States, it must state in "substantially the following form" that "'I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on (date). (Signature)'." See Chao v. Westside Drywall, Inc., 709 F. Supp. 2d 1037, 1052 (D. Or. 2010) (holding that declarations not made in accordance with 28 U.S.C. § 1746 were inadmissible). Therefore, the Court did not consider the Williston 7/7/14 Decl.

iii.  Francis 6/17/14 Decl. and Wilson 6/17/14 Decl.

During the Hearing, the Trustee's counsel sought to strike the Francis 6/17/14 and Wilson 6/17/14 Decl. because: 1) the Second OSC required Francis and PSL to appear at the Hearing and neither did so; and 2) the Trustee made his witnesses available for cross-examination, but he did not have an opportunity to cross-examine Francis and Wilson. BK Docket #623 at 69:18-70:3. Francis's and PSL's counsel argued that Francis and PSL did not have to personally appear at the Hearing because: 1) the Second OSC was vague and ambiguous and did not require Francis and PSL to appear at the Hearing; 2) Francis's and PSL's counsel appeared at the Hearing as their authorized and knowledgeable designee; 3) LBR 9013-1(i) permits a witness's absence at a first hearing on a motion and allows declarations under penalty of perjury in lieu of oral testimony; and 4) the Trustee's counsel never gave notice of his intent to cross-examine Francis and Wilson at the Hearing pursuant to LBR 9013-1(i). BK Docket #623 at 10:11-24, 11:1-11, 70:5-72:21, 73:19-74:4.

The Court disagrees with Francis's and PSL's assertion that the Second OSC was vague and ambiguous. According to Francis's and PSL's counsel, the Second OSC only required a knowledgeable designee to appear at the Hearing, and he—as Francis and PSL's counsel—appeared at the Hearing. As the Court noted during the hearing, the OSC stated specifically that "Joseph R. Francis and [PSL] (through its authorized and knowledgeable designee) *shall* appear" at the Hearing. Second OSC § A (emphasis added). The Court finds that there is no vagueness or ambiguity regarding whether Francis and PSL were required to appear at the Hearing. Further, if, as argued by counsel, the Second OSC was really meant to allow an authorized and knowledgeable designee to appear on behalf of both Francis and PSL, it would have said "through *their* authorized and knowledgeable designee."

More importantly, "authorized and knowledgeable designee" is a phrase commonly used when a corporate entity designates a person to testify on behalf of the entity. Federal Rule of Civil Procedure (FRCP) 30(b)(6). The designee represents "the 'positions' of the corporation on the relevant topics" and "represents the knowledge of

20

the organization on the topic designated." In re Enron Creditors Recovery Corp., 376 B.R. 442, 455-56 (Bankr. S.D.N.Y. 2007). There is no admissible evidence demonstrating Francis and PSL's counsel had the requisite knowledge to testify on behalf of PSL. And, the contention that Francis' counsel could testify on behalf of Francis is incorrect.

Counsel for Francis and PSL claimed that LBR 9013-1(i) did not require them to appear at the Hearing because it indicates that: 1) if a court requires or allows oral testimony, it must give the parties 2 days' notice; 2) in lieu of live testimony, "a declaration under penalty of perjury will be received into evidence;" 3) "[u]nless the court orders otherwise, a witness need not be present at the first hearing on a motion;" and 4) the Court may continue the matter to another date if it decides to hear oral testimony. LBR 9013-1(i)(1), (3), (4), (5).[19]

Francis's and PSL's counsel's reliance on LBR 9013-1 is not persuasive. The Second OSC, entered on 6/10/14, provided all parties with notice that the Court would allow testimony at the Hearing, as required by LBR 9013-1(i)(1). LBR 9013-1(i)(3), indicating that in lieu of live testimony a declaration will be received into evidence, is subject to LBR 1001-1(d), which provides that a court may waive application of any LBR or make additional orders as it deems appropriate, in the interest of justice. The Second OSC explicitly required Francis and PSL to appear at the Hearing. For the same reason, LBR 9013-1(i)(4) is inapplicable. LBR 9013-1(i)(4) ("*Unless the court orders otherwise*, a witness need not be present at the first hearing on a motion." (emphasis added)).

Finally, Francis's and PSL's counsel's citation to LBR 9013-1(i)(5) and request that the Court continue the Hearing to allow Francis and PSL an opportunity to testify is meritless. Based on the express terms of the Second OSC, Francis and PSL had more than sufficient notice that: 1) the Hearing was scheduled on 7/10/14; 2) they were required to appear at the Hearing and show cause why they should not be held in contempt; 3) during the Hearing, they would have an opportunity to present live testimony; and 4) the Court would limit live testimony to controverted facts. They chose not to appear at the Hearing and did so at their own peril. See Donovan v. Mazzola, 716 F.2d 1226, 1240 (9th Cir. 1983) (affirming the district court's contempt finding and determining that a request for a continuance of an order to show cause hearing was properly denied where the contemnors had ample notice they had to show cause and failed to do so).

---

[19]   Francis's and PSL's counsel's assertion that the LBRs required the Trustee's counsel to provide two days' notice of his intent to cross-examine Francis and Wilson lacks merit. The LBRs do not contain any such provision. And, although Central District of California Local Rule (L.R.) 7-8 requires a party to give 14 days' notice of an intent to cross-examine a declarant, that L.R. is not controlling on proceedings in this Court. LBR 1001-1(b)(2) ("The [LBRs] apply to all bankruptcy cases and proceedings . . . pending in the United States Bankruptcy Court for the Central District of California."); In re Flanagan, 999 F.2d 753, 758 n.7 (3d Cir. 1993) (stating that the district court's local rules did not apply to proceedings in bankruptcy); State Bank of India v. Kaliana (In re Kaliana), 207 B.R. 597, 603 (Bankr. N.D. Ill. 1997) (finding that time limits contained in a district court local rule were "inapposite and not applicable" to proceedings before the bankruptcy court).

It is beyond dispute that courts should generally hold evidentiary hearings in adjudicating contempt proceedings. United States v. Ayres, 166 F.3d 991, 996 (9th Cir. 1999) ("[W]e do not encourage the imposition of contempt sanctions 'on the papers'"); Peterson v. Highland Music, Inc., 140 F.3d 1313, 1324 (9th Cir. 1998) ("[A] district court ordinarily should not impose contempt sanctions solely on the basis of affidavits."). Although the Court held an evidentiary hearing, Francis and PSL decided not to participate.

Further, the Trustee's argument that the Court should strike the Francis 6/17/14 Decl. and the Wilson 6/17/14 Decl. because they were not subject to cross-examination is well taken. The purpose of cross-examination is "to obtain the truth" and the "inability to cross-examine frustrates the purpose of the process." In re Amica, Inc., 135 B.R. 534, 554 (Bankr. N.D. Ill. 1992). "[W]hen the witness' absence . . . would not have occurred except for the voluntary act of the witness himself . . . the direct testimony should ordinarily be stricken." Id.; accord In re Oh, 278 B.R. 844, 850 n.7 (Bankr. C.D. Cal. 2002) (stating that the court did not admit declarations into evidence at trial because the declarant did not attend the trial and was not available for cross-examination); In re Budryk, 2009 WL 1395469, at *1 (Bankr. D. Mass. 2009) ("Because the affiant appraiser was unavailable for cross-examination on [a] critical and disputed issue, the Court declined to admit the Bank's evidence of value in the form of an affidavit.").

Therefore, the Court believes that the Francis 6/17/14 Decl. and the Wilson 6/17/14 Decl. should be stricken because they did not appear at the Hearing as required by the Second OSC and they were not subject to cross-examination. Even if, however, the express terms of the Second OSC and/or the LBRs did not require Francis and PSL to be present at Hearing, and even if the Court were to consider their declarations, as analyzed below, it would not alter the outcome of the Court's ruling.[20]

### b. Francis's and PSL's Actions on 5/9/14 and 5/16/14

The Trustee contends that when Francis and Wilson entered the Premises on 5/9/14 and 5/16/14, Francis and PSL violated the PI.[21] Contempt Motion at 8-9. Francis and PSL counter that there was no violation of the PI because by its express terms, the PI only applied to the Debtors. And, they assert that on the dates in question, GGWA—and not the Debtors—occupied the Premises.[22] Response at 4. The Trustee responds

---

[20] The remainder of the analysis in this ruling takes into consideration the Francis 6/17/14 Decl. and the Wilson 6/17/14 Decl.

[21] The Contempt Motion seeks an order holding Francis and PSL in civil contempt. Contempt Motion at 4. And the OSC required Francis and PSL to show cause why they should not be held in civil contempt. It is undisputed that Wilson is PSL's manager. Wilson 6/17/14 Decl. ¶ 2. Therefore, for the purposes of this analysis, the Court does not refer to Wilson individually, but rather, only in her role as PSL's manager.

[22] The Court notes that the parties recount markedly different versions of what transpired on 5/9/14 and 5/16/14 after Francis and Wilson entered the Premises. The Court, however, need not and will not make a credibility determination regarding what occurred because the Trustee based the Contempt Motion on

that the terms of the PI were clear and it is equally clear that Francis violated the PI. Reply at 3.

There is no dispute that on 5/9/14 and on 5/16/14, Francis and Wilson entered the Premises. Therefore, the only issues that need to be resolved regarding Francis's and Wilson's entering the Premises on those dates are: 1) whether the Debtors occupied the Premises; 2) whether Francis and PSL knew the Debtors occupied the Premises; and 3) whether Francis's and PSL's actions were based on a good faith and reasonable interpretation of the PI.

>  i. The Debtors Occupied and Remained in Possession of the
>     Premises and the Debtors' Office was located at the Premises on
>     5/9/14 and on 5/16/14

Although the Debtors sold substantially all of their assets to GGWA on 4/28/14, it is beyond dispute that the Debtors did not cease to exist on that date. After the Sale, Debtors continued to exist and they continue to do so this day. Their cases are still pending before this Court and although they are no longer conducting the Girls Gone Wild business, they are in the process of collecting approximately $400,000 in accounts receivable, litigating numerous matters, investigating avoidance actions, and resolving issues with various creditors. BK Docket #590 at 4, 14, 15. The PI contained no qualification or limitation indicating that it only applied if the Debtors were still conducting the Girls Gone Wild business.

Troszak's uncontroverted testimony demonstrates that the Sale did not include all of the Debtors' property and that the Debtors had no offices other than the Premises during their bankruptcy cases. BK Docket #623 at 49:11-16, 51:14-19. During the Hearing, Levin and Troszak testified that on 5/9/14 and 5/16/14:

1. GGWA "utiliz[ed] the space of the [Debtors] as part of the transition," id. at 15:17-16:1;
2. Individuals were doing work for the Debtors at the Premises, id. at 15:17-16:1, 53:8-17, 56:13-16, 57:12-13, 57:21-23, 59:17-20;
3. The Debtors were conducting business at the Premises, id. at 29:3-8, 52:17-54:2, 66:20-67:2;
4. The Debtors maintained their electronic files, hard copy records, and the Cars at the Premises, id. at 29:3-14, 52:8-14, 67:14-19;

---

the fact that Francis's and Wilson's entering the Premises violated the PI. Contempt Motion at 17 ("Francis entered the Premises twice in May 2014 . . . . This is a clear violation of the [PI]."). Further, Francis and PSL agree that what happened after Francis and Wilson entered the Premises is irrelevant to the matter before the Court. Response at 8 ("Although not relevant to the issue of whether the [PI] was violated, the interaction between [Francis] and the employees and officers of [GGWA] were not at all as described . . . ."). Further, although both sides presented video evidence of Francis at the Premises, other than the fact that the videos show that Francis came within 100 feet of the Premises and actually entered the Premises, Francis's actions (as well as the actions of other persons in the videos) is irrelevant to the issues before the Court.

5. The Debtors had approximately 100 boxes of documents at the Premises, and were using two or three out of 12 or 13 offices, including storage, id. at 29:7-14, 30:19-31:1; and

6. The Debtors continued to administer the estate, receive mail and payments, and pay expenses from the Premises, id. at 52:20-21, 53:8-10, 53:18-54:2, 57:23-24.

It is also undisputed that the Trustee—and not GGWA—paid the Landlord rent for the Premises through 5/28/14. Neilson 6/2/14 Decl. ¶ 5; Response at 6-7 (not disputing that the Trustee paid rent for the Premises for 5/28/14 and instead arguing that paying rent was insufficient); BK Docket #623 at 49:11-25. And, that on 5/28/14, Troszak picked up the last of the Debtors' documents from the Premises. Id. at 53:1-3.

A 5/15/14 letter from the Trustee's counsel to the Landlord's counsel further demonstrates that the Debtors occupied the Premises through 5/28/14 (5/15/14 Letter). In the 5/15/14 Letter, the Trustee's counsel stated:

> As you know, for the past several months *the Debtors have occupied the [Premises] while their [b]ankruptcy [c]ases have been pending.* That occupancy has been governed in part by the [PI] and other [] Court orders referenced therein. *That occupancy will, per my April 28, 2014 letter to [EOP] and [PSL], end when the Debtors vacate the Premises on or before May 28, 2014.* However, *so long as the Debtors' occupancy continues*, the [PI] applies with full force.
>
> On April 23, 2014, the [] Court entered [the Sale Order]. GGWA is in the process of moving the Debtors' physical assets (primarily computer equipment and office furniture) *from the Premises to GGWA's offices.* We have been informed that GGWA will complete the move on or before this weekend, May 17-18, 2014, *i.e.*, in advance of the date the Debtors gave notice they would vacate the Premises.
>
> . . .
>
> The Trustee sincerely appreciates the good relationship it has had with [EOP] to date, and hopes it can continue *through and including the end of the Trustee's occupancy of the Premises* . . . .

Heyn 6/2/14 Decl. ¶ 9, Ex. E (emphases added).

The uncontroverted evidence demonstrates that the Trustee and the Debtors remained in possession of, and continued to occupy. the Premises until 5/28/14. BK Docket #623 at 49:20-21, 52:15-53:3, 60:24-61:4. And, after the Sale on 4/28/14, the Debtors had no offices other than the Premises. Id. at 49:11-16.

Francis and PSL have not provided any evidence to the contrary.[23]  Instead, Francis and PSL argue that the Debtors did not occupy the Premises on 5/9/14 or 5/16/14, relying on the Levin 5/22/14 Decl., the Lazareff 5/22/14 Decl., and CCP § 527.8. Response at 4-6. According to Francis and PSL, the Levin 5/22/14 Decl. and the Lazareff 5/22/14 Decl. show that GGWA, rather than the Debtors, occupied the Premises on 5/9/14 and 5/16/14. Response at 4-6. The Levin 5/22/14 Decl. and the Lazareff 5/22/14 Decl. were originally submitted in connection with GGWA's petition for a workplace violence restraining order in the Superior Court of California, County of Los Angeles, Case No. SS024602. Contempt Motion at 3 n.2. Francis and PSL highlight that under CCP § 527.8, "only an employer may apply for such a restraining order and only to prevent the threat of violence in the employer's own workplace against the employers' own employees." Response at 6.

The problem with Francis's and PSL's argument is that they focus on GGWA's presence on the Premises, while ignoring the Debtors' and the Trustee's occupancy of the Premises. The Levin 5/22/14 Decl. and the Lazareff 5/22/14 Decl. only discuss Francis's and PSL's actions against GGWA and GGWA's employees. Francis and PSL do not provide any evidence that the Debtors had vacated the Premises by either 5/9/14 or 5/16/14.

> ii.  Francis and PSL had Notice of the PI and that the Debtors
> Occupied the Premises on 5/9/14 and on 5/16/14

Francis's and PSL's counsel appeared at the 10/22/13 Hearing when the Court granted the PI. And, the Trustee served the PI on Francis, Wilson, and Francis's and PSL's counsel. AP Docket #87. Therefore, Francis and PSL cannot dispute that they had notice of the PI, which among other things, prohibited Francis and PSL from coming within 100 feet of the Premises.

It is also beyond dispute that Francis and PSL knew before 5/9/14, that the Debtors occupied the Premises. On 4/28/14. the date the Sale closed, the Trustee's counsel sent Francis's and PSL's counsel the 4/28/14 Letter, indicating that he intended to vacate the Premises by 5/28/14:

> As you know, for the past several months, the Debtors have occupied [the Premises] while their bankruptcy cases have been pending. Pursuant to the [Stipulation] and [the Consent Order] . . . the Trustee and the Debtors are giving you 30 days' notice of their intent to vacate the Premises. The Trustee and the Debtors will completely vacate the Premises on or before noon, May 28, 2014.

---

[23]  Both Francis and Wilson state that immediately before 5/9/14, they learned the Debtors were no longer "physically located" at the Premises, "having sold all of their assets to [GGWA]." Francis 6/17/14 Decl. ¶ 5; Wilson 6/17/14 Decl. ¶ 7. Francis and Wilson do not explain the source of their knowledge, nor have Francis and PSL offered any evidence that the Debtors vacated the Premises before 5/9/14.

Weiss 5/8/14 Decl. ¶ 5; Heyn 6/2/14 Decl. ¶ 5, Ex. B.[24]   The 5/2/14 Letter, sent by the Trustee's counsel to Francis's and PSL's counsel, reiterated that "[t]he Trustee and the Debtors will completely vacate the Premises on or before noon, May 28, 2014," and requested that Francis and PSL return the Vehicles at that time.   Heyn 6/2/14 Decl. ¶ 6, Ex. C.

Even if, however, Francis had any doubt that the Debtors remained in possession of the Premises on 5/9/14 or that the Premises continued to be the Debtors' offices after the Sale, Francis could have had absolutely no doubt regarding these facts when he entered the Premises a second time on 5/16/14.   On 5/9/14, after Francis and Wilson entered the Premises, the Trustee's counsel sent the 5/9/14 Email to Francis's and PSL's counsel stating "[a]s you know, the Debtors are in the process of vacating the [Premises] and will be out by May 28.   The Debtors have paid rent through May 28. *Until then, the Debtors still occupy the location.*"   Id. ¶ 7, Ex. D (emphasis added).   The Trustee's counsel then reminded Francis's and PSL's counsel of the terms of the PI, the fact that Francis was prohibited from coming within 100 feet of the Premises, and that Francis's actions were in "direct violation of the [PI]."   Id. ¶ 7, Ex. D.

On 5/15/14, the Landlord also notified Francis's and PSL's counsel that "last Friday [] Francis of PSL violated the October 22, 2013 [PI]. . . . [T]he [PI] remains in place, *the Trustee remains in possession of the Premises until May 28, 2014*, and [] Francis has no rights to enter the Premises at this time."   Id. ¶ 9, Ex. E (emphasis added).[25]

The Trustee has presented clear and convincing evidence that the Debtors occupied the Premises on 5/9/14 and 5/16/14, the Premises were the Debtors' offices on those

---

[24]   The 4/28/14 Letter was addressed to PSL and the Landlord.   PSL and Francis are represented by the same attorney.   In re Perle, 725 F.3d 1023, 1027 (9th Cir. 2013) ("Ordinarily, a lawyer is a client's agent and, consistent with agency law, clients 'are considered to have notice of facts known to their lawyer-agent.'"); Washington v. Parkinson, 737 F.3d 470, 473 (7th Cir. 2013) ("[A]n attorney is the agent of her client, and an agent's knowledge is imputed to her principal.").

[25]   The 5/15/14 Landlord Letter was addressed to Ronald Tym.   Tym has appeared before the Court in various capacities.   On 3/29/13, Tym filed a "Declaration of Ron Tym in Opposition to Motion for Oder [sic] Directing the Appointment of a Chapter 11 Trustee," BK Docket #44, in which he stated that he was "an attorney who represents the defendants in the California Marker Judgment Litigation (as defined in the Motion)."   The California Marker Judgment Litigation was Wynn Las Vegas, LLC d/b/a Wynn Las Vegas v. Joseph Francis, Case No. BS 123009, which was filed in Los Angeles County Superior Court.   BK Docket #28 at 11.   On 11/16/12, Wynn Las Vegas, LLC filed a Motion in the California Marker Judgment Litigation to appoint a receiver to "demand, enforce, collect, and receive all earnings by, and/or any entitlement to compensation (collectively 'earnings'), earned or owed to Judgment Debtor Joseph Francis ('Francis') from any and all sources including but not limited to GGW Brands, LLC; GGW Direct, LLC; GGW Events, LLC; and GGW Magazine, LLC."   BK Docket #30, Ex. F.   On 4/24/13, Tym appeared on behalf of PSL and Argyle Online during the hearing on the TRO Motion.   AP Docket #43 at 4:10-15.   Tym stated that he represented PSL and Argyle Online only and that he did not represent Francis.   Id.   On 5/14/13, Tym filed a Declaration in support of PSL, Argyle Online, and Francis's "Opposition . . . to Motion for Authority to Revoke Cancellation and to File Voluntary Chapter 11 Petition for GGW Marketing, LLC."   BK Docket #s 137, 141.   On 7/23/13, Tym signed a "Notice of Dismissal Pursuant to Federal Rules of Civil Procedure 41(a) or (c) and FRBP 7041" on behalf of Argyle Online above the "Signature of Attorney/Party."   Argyle Online, LLC v. Neilson, 13-01552-SK, Docket #70.

dates, Francis and PSL knew that the Debtors occupied the Premises on 5/9/14 and 5/16/14, and that Francis and Wilson, PSL's manager, entered the Premises on 5/9/14 and on 5/16/14. The PI specifically and unambiguously barred Francis and PSL from coming within 100 feet of the Premises. PI ¶ 1.[26] Therefore, the Court finds by clear and convincing evidence that Francis and PSL violated the express terms of the PI.

> ### iii.   Francis and PSL Have Not Demonstrated that Their Actions Were Based on a Good Faith and Reasonable Interpretation of the PI

The Court, however, cannot find Francis and PSL in contempt if they demonstrate that their actions were based on a good faith and reasonable interpretation of the PI. Vertex Distrib., Inc. v. Falcon Foam Plastics, Inc., 689 F.2d 885, 889 (9th Cir. 1986) (citing Rinehart v. Brewer, 483 F. Supp. 165, 171 (S.D. Iowa 1980)).  Francis and PSL claim that even if the Court finds that they violated the PI, they should not be held in civil contempt because they had a reasonable and good faith belief that the PI no longer applied.  During the Hearing, Francis and PSL's counsel reiterated this argument. When the Court inquired regarding what evidence in the record supported such a position, counsel directed the Court's attention to the Francis 6/17/14 Decl. ¶¶ 4-7.  The only paragraph that seems remotely relevant to the issue whether Francis had a good faith belief that the PI no longer applied is ¶ 5, which states, in its entirety, that: "Immediately prior to May 9, 2014, I learned that the Debtors in this matter were no longer physically located in Suite 1000, having sold all of their assets to [GGWA].  I also learned that it was their intention to move out all of the furnishings and other items from the Suite."

Although the Francis 6/17/14 Decl. indicates that before 5/9/14, Francis learned that the Debtors were no longer located at the Premises, he provides no information or details regarding how he purportedly learned these facts.  Further, in that same paragraph Francis undercuts his previous statement by acknowledging that "I also learned it was their intention to move out all of the furnishings and other items from the Suite."  If the Debtors were no longer located at the Premises, there would be no furnishings or other items to move from the Premises.  And, as the Trustee argues, if Francis and PSL believed that the Debtors had vacated the Premises before 5/9/14, then pursuant to the Consent Order and the PI, they would have had to return the Vehicles to the Trustee. Further, the problem with Francis's and PSL's contention—that they had a good faith and reasonable belief that the PI no longer applied—is that neither the Francis 6/17/14 Decl. nor the Wilson 6/17/14 Decl. mention their interpretation of the PI or the fact that they purportedly believed it no longer applied.  Therefore, there is insufficient evidence substantiating Francis's and PSL's claim that they acted based on a good faith and reasonable interpretation of the PI.

---

[26]  Francis's and PSL's counsel raised an issue during the Hearing regarding whether the PI prohibited Francis from coming within 100 feet of the building in which the Premises were located or whether it only prohibited Francis from coming within 100 feet of the suite where the Premises were located.  The Court need not resolve this issue because it is beyond dispute that not only did Francis come within 100 feet of the suite where the Premises were located, but he also entered the Premises.

c. The Vehicles

The Trustee asserts that despite repeated requests, Francis and PSL have failed to turn
over the Vehicles, and therefore, they are in violation of the Consent Order ¶ 15.
Contempt Motion at 13-14. Francis and PSL acknowledge that they have not turned
over the Vehicles to the Trustee and assert that it is impossible to do so because they
were taken by Williston and DGL. Response at 8-9.[27]

Francis's assertion that the Vehicles were taken and that he cannot get them back is
both difficult to believe and insufficient to demonstrate impossibility. Francis must "show
'categorically and in detail' why he [was] unable to comply." FTC v. Affordable Media,
LLC, 179 F.3d 1228, 1241 (9th Cir. 1999) (citations omitted). And the Court has the
discretion to discredit self-serving, uncorroborated testimony. United States v. Bright,
596 F.3d 683, 695 (9th Cir. 2010); see Maggio v. Zeitz, 333 U.S. 56, 75-76 (1948)
(noting that an inability to comply is not established by evidence or the alleged
contemnor's denials "which the court finds incredible in context").

Francis and PSL have not presented any admissible evidence to substantiate their
assertion that the Vehicles were taken in Mexico and that they cannot get them back—
other than Francis's and Wilson's self-serving statements. For example, Francis and
PSL did not submit a police report demonstrating that Francis or PSL reported the theft
of the Vehicles,[28] a contract substantiating that the Debtors and DGL had an agreement
for the Debtors to "conduct a number of promotional events at a Guadalajara strip club,"
Francis 6/17/14 Decl. ¶ 12, that he has made any attempts to retrieve the Vehicles, or
that Williston's agents have refused his requests to return the Vehicles. Although
Francis claims that under Mexico law he is "powerless to retrieve the Vehicles," Francis
does not cite any such law. Id.

Further, Francis provides no explanation regarding why the Vehicles were in Mexico,
why he was not present at the location from which the Vehicles were purportedly taken,
and there is an inconsistency regarding where the Vehicles allegedly were when they
were supposedly taken.[29] Finally, the timing of the alleged taking of the Vehicles is
suspect, given that Francis claims it occurred just a few days before the date that
Francis was required to turn the Vehicles over to the Trustee. And, Francis's and PSL's
failure to notify the Trustee of the alleged taking of the Vehicles despite reminders and

---

[27] Francis and Wilson, individually and on behalf of PSL and Argyle Online, signed the Stipulation, AP
Docket #30, Francis's and PSL's counsel approved the Consent Order as to form, AP Docket #32, and as
noted above, Francis had notice of the PI, which incorporated the terms of the Consent Order. AP
Docket #86. Therefore, it is undisputed that Francis and PSL knew they were required to return the
Vehicles when the Trustee vacated the Premises.

[28] Francis understands the importance of filing a police report. He filed one on 5/18/14 in which he
claimed to be a victim of battery. Francis 6/17/14 Decl. ¶ 10, Ex. A.

[29] As noted above, Francis and PSL filed the Errata, asserting, without providing admissible evidence,
that their attorney mistakenly wrote Puerto Vallarta, Mexico instead of Guadalajara, Mexico in the
Response.

inquiries from the Trustee regarding the Vehicles leads to the conclusion that Francis's claims that the Vehicles are no longer in his possession are not true. Further, Troszak, one of the Trustee's financial advisors, testified at the hearing that the Debtors' records do not include any contracts or amounts owing to Williston, DGL, or any Mexican strip club. BK Docket #623 at 54:22 - 55:18, 68:9-13, 69:4-10. Based on the analysis above, the Court finds by clear and convincing evidence that Francis and PSL violated the Consent Order and PI by not returning the Vehicles to the Trustee. Therefore, the Court orders Francis and PSL to pay to the Clerk of the Court a $5,000 fine per day, from the date that a contempt order is entered, until Francis and PSL return the Vehicles to the Trustee.[30]

### d. Fees and Costs

Francis and PSL contend that neither the Trustee nor the Trustee's counsel should be awarded any costs or fees because civil contempt sanctions cannot be punitive. Francis's and PSL's position is not persuasive. Although they are correct that civil sanctions cannot be punitive, what they fail to recognize is that civil contempt sanctions can be compensatory. In re Count Liberty, LLC, 370 B.R. 259, 273 (Bankr. C.D. Cal. 2007). For example, civil sanctions can be imposed in the amount necessary to compensate the Trustee and the Trustee's counsel for fees and costs incurred to: 1) deal with Francis's and Wilson's presence on the Premises on 5/9/14 and 5/16/14; 2) require Francis and PSL to turnover the Vehicles; 3) research, prepare, and file the Contempt Motion and the Reply; and 4) appear at the Hearing. Havelock v. Taxel (In re Pace), 67 F.3d 187, 193 (9th Cir. 1995) ("a trustee can recover damages in the form of costs and attorney's fees under section 105(a) for ordinary civil contempt"); In re Count Liberty, LLC, 370 B.R. at 274 ("A compensatory fine must be limited to actual damages incurred as a result of the violation. [Citations.] Actual loss includes attorneys fees and costs incurred in securing compliance with the order. [Citations.]."). Here, the Trustee's counsel submitted detailed billing records demonstrating that through 6/23/14, they incurred $40,228 in legal fees related to Francis's and PSL's entry onto the Premises and the Trustee's attempts to recover the Vehicles. Heyn 6/26/14 Decl. ¶ 6, Exs. G, H. Further, the Trustee's counsel anticipated incurring approximately $20,000 in additional fees from 6/24/14 through the date of the Hearing. Id. ¶ 6.

By 7/29/14, the Court orders the Trustee's counsel to file a supplemental declaration with admissible evidence, substantiating the amount of attorneys' fees and costs the Trustee incurred from 6/24/14 through the date that the supplemental declaration is filed due to Francis's and PSL's violation of the Consent Order and PI, as well as the fees and costs he anticipates incurring to participate in another hearing.

### V. Conclusion

Based on the analysis above, the Court finds that Francis and PSL violated the Consent Order and PI and holds them in civil contempt. The Court orders Francis and PSL to pay the Trustee attorney's fees and costs in the amount of $40,228, which the Trustee

---

[30] Neither Francis nor PSL objected to $5,000 per day.

incurred through 6/23/14 due to Francis's and PSL's contemptuous conduct.   The Court
further orders Francis and PSL to return the Vehicles to the Trustee immediately, and
imposes sanctions of $5,000 per day from date of the entry of a contempt order against
Francis and PSL, payable to the Court, until they return the Vehicles to the Trustee.

The Court sets a continued hearing in this matter on 7/31/14 at 10:00 a.m. (7/31/14
Hearing).  During the 7/31/14 Hearing, the Court will inquire of the Trustee's counsel
and Francis's and PSL's counsel regarding whether Francis and PSL have complied
with this ruling and a subsequently issued contempt order.  If they have not, the Court
will consider what additional sanctions, if any, including issuance of arrest warrants for
Francis and PSL, might be appropriate.  During the 7/31/14 Hearing, the Court will also
determine the additional amount of attorneys' fees and costs that Francis and PSL must
pay the Trustee from 6/24/14 through the 7/31/14 Hearing.

Pursuant to LBR 7052-1(a) and 9021-1(b), the Trustee must serve and lodge a
proposed order via LOU within 7 days of the entry of this ruling.

# Exhibit F

1  Michael L. Tuchin (Cal. Bar No. 150375)
   Matthew C. Heyn (Cal. Bar No. 227474)
2  Jonathan M. Weiss (Cal. Bar No. 281217)
   Samuel M. Kidder (Cal. Bar No. 284015)
3  KLEE, TUCHIN, BOGDANOFF & STERN LLP
   1999 Avenue of the Stars, Thirty-Ninth Floor
4  Los Angeles, California 90067
   Telephone:    310-407-4000
5  Facsimile:    310-407-9090
   Email:    mtuchin@ktbslaw.com
6            mheyn@ktbslaw.com
            jweiss@ktbslaw.com
7            skidder@ktbslaw.com

8  *Attorneys for R. Todd Neilson, Chapter 11*
   *Trustee*
9

FILED & ENTERED

JUL 18 2014

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY carranza  DEPUTY CLERK

10              **UNITED STATES BANKRUPTCY COURT**

11               **CENTRAL DISTRICT OF CALIFORNIA**

12                  **LOS ANGELES DIVISION**

13  In re                                    Jointly Administered
                                             Case No. 2:13-bk-15130-SK
14  GGW BRANDS, LLC,
15  GGW DIRECT, LLC,                         Chapter 11
    GGW EVENTS, LLC,
16  GGW MAGAZINE, LLC and                    **ORDER HOLDING JOSEPH R. FRANCIS**
    GGW MARKETING, LLC,                      **AND PERFECT SCIENCE LABS, LLC IN**
17                                           **CONTEMPT OF COURT**
              Debtors.
18                                                   Initial Hearing
                                             Date:   July 10, 2014
19  This pleading affects:                   Time:   10:00 a.m.
    All Debtors                      ■
20  GGW Brands, LLC                  ☐               Continued Hearing
    GGW Direct, LLC                  ☐      Date:   July 31, 2014
21  GGW Events, LLC                  ☐      Time:   10:00 a.m.
    GGW Magazine, LLC                ☐      Place:  United States Bankruptcy Court
22  GGW Marketing, LLC               ☐              Courtroom 1575
                                             255 E. Temple Street
23                                           Los Angeles, CA 90012

24

25

26

27

28

151563.1

1    On July 10, 2014, this Court held a hearing on the *Order to Show Cause Why Joseph R.*

2  *Francis and Perfect Science Lab, LLC Should Not Be Held in Contempt* [BK Docket No. 585].[1]

3  Appearances are set forth on the transcript of the hearing [BK Docket No. 623]. At the hearing,

4  the Court received evidence and heard argument. For the reasons set forth in the *Court's Final*

5  *Ruling Re: "Order to Show Cause Why Joseph R. Francis and Perfect Science Labs, LLC Should*

6  *Not Be Held in Contempt"* [BK Docket No. 629] (the "Ruling"):[2]

7    1.    The Court hereby holds Joseph R. Francis ("Francis") and Perfect Science Labs,

8  LLC ("PSL") in contempt of Court for violating the *Order Approving Stipulation Resolving*

9  *Emergency Ex Parte Application to Enforce and, the Extent Necessary, Clarify and Expand*

10  *Temporary Restraining Order by Specifically Naming Additional Parties* [AP Docket No. 32] (the

11  "Consent Order") and the *Preliminary Injunction* [AP Docket No. 86] (the "Preliminary

12  Injunction") based on the following acts:

13    a.    In violation of Paragraph 1 of the Preliminary Injunction, on May 9, 2014,

14    Francis and Abbey Wilson, the manager of PSL, ("Wilson") entered the

15    offices of GGW Brands, LLC, GGW Direct, LLC, GGW Events, LLC, and

16    GGW Magazine, LLC (collectively, "GGW"), which were located at 10940

17    Wilshire Boulevard, Suite 1000, Los Angeles, California on May 9, 2014.

18    b.    In violation of Paragraph 1 of the Preliminary Injunction, on May 16, 2014,

19    Francis and Wilson again entered GGW's offices, which were located at

20    10940 Wilshire Boulevard, Suite 1000, Los Angeles, California on May 16,

21    2014.

22    c.    Paragraph 15 of the Consent Order and paragraph 8 of the Preliminary

23    Injunction require that Francis and PSL return the following two

24

25  [1]   All references to "BK Docket" are to the docket in *In re GGW Brands, LLC*, Case No. 2:13-
bk-15130-SK and all references to "AP Docket" are to the docket in *Nielson v. Francis (In re*

26  *GGW Brands, LLC)*, Adv. No. 2:13-ap-01468-SK.

27  [2]   The Ruling constitutes the Court's findings of fact and conclusions of law under Rules 9014
and 7052 of the Federal Rules of Bankruptcy Procedure.

28

1      automobiles to the Trustee upon the Trustee vacating GGW's offices: (i) a

2      2007 Cadillac Escalade with a vehicle identification number ("VIN")

3      ending 5603; and (ii) a 2012 Bentley Flying Spur with VIN ending 0815

4      (collectively, the "Vehicles"). In violation of paragraph 15 of the Consent

5      Order and paragraph 8 of the Preliminary Injunction, Francis and PSL failed

6      to return the Vehicles on May 28, 2014 (the day the Trustee and GGW

7      vacated GGW's offices) or at any time since.

8          d.   Francis and PSL have failed to demonstrate that the above-described

9      violations of the Preliminary Injunction and Consent Order were based on a

10     good-faith and reasonable interpretation of the Preliminary Injunction or the

11     Consent Order, both of which are specific and definite.

12         e.   Francis and PSL had notice of the Preliminary Injunction and Consent

13     Order prior to the above-described violations. Francis and PSL have failed

14     to demonstrate that they were, or are, unable to comply with the Preliminary

15     Injunction or the Consent Order.

16     2.   Francis and PSL are hereby ORDERED to immediately return both Vehicles to

17     R. Todd Neilson, as Chapter 11 trustee for the estate of GGW, (the "Trustee") or the Trustee's

18     designated representative.

19     3.   Francis and PSL are hereby ORDERED to pay the Clerk of the Court $5,000 for

20     every day after this Contempt Order is entered that the Vehicles have not been returned to the

21     Trustee or his designated representative. The payments, which shall be due 24 hours after every

22     day that the Vehicles have not been returned, shall be made by check payable to "Clerk of the U.S.

23     Bankruptcy Court for the Central District of California" and personally delivered or sent by

24     certified mail to the Trustee's offices at Berkeley Research Group, LLC, 2049 Century Park East,

25     Suite 2525, Los Angeles, CA 90067. The Trustee is hereby authorized to hold such fee payments

26     until the Continued Contempt Hearing (defined below).

27     4.   Francis and PSL are hereby ORDERED to pay to pay the Trustee's attorneys' fees

28     and costs in the amount of $40,228 for the period May 9, 2014 through June 23, 2014. This

151563.1                                    2

1   amount is payable immediately upon entry of this Contempt Order.  This Contempt Order is

2   without prejudice to any additional attorneys' fees to be proven at the Continued Contempt

3   Hearing.

4        5.      On or before July 29, 2014, the Trustee shall file a supplemental declaration with

5   admissible evidence, substantiating the amount of attorney' fees and costs the Trustee incurred

6   from June 24, 2104 through the date that the supplemental declaration is filed due to Francis's and

7   PSL's violation of the Consent Order and the Preliminary Injunction, as well as the attorneys' fees

8   and costs that he anticipates incurring to participate in the Continued Contempt Hearing.

9        6.      The Court will hold a continued contempt hearing on **July 31, 2014, at 10:00 a.m.,**

10  (the "Continued Contempt Hearing") at **255 E. Temple Street, Courtroom 1575, Los Angeles,**

11  **California 90012.**  During the Continued Contempt Hearing, the Court will inquire of the

12  Trustee's counsel and Francis's and PSL's counsel regarding whether Francis and PSL have

13  complied with the Ruling and this Contempt Order.  If they have not, the Court will consider what

14  additional sanctions, if any, including arrest warrants and civil incarceration for Francis and

15  Wilson, might be appropriate.  During the Continued Contempt Hearing, the Court will also

16  determine the additional amount of attorneys' fees and costs that Francis and PSL must pay the

17  Trustee for attorneys' fees and costs incurred from June 24, 2014 through and including the date

18  of Continued Contempt Hearing.

19                                          ###

20

21

22

23  Date: July 18, 2014

                              Sandra R. Klein
24                            United States Bankruptcy Judge

25

26

27

28

151563.1                              3